1

Robert P. Goe - State Bar No. 137019
Jonathan D. Alvanos – State Bar No. 276206
**GOE & FORSYTHE, LLP**
18101 Von Karman Ave., Suite 510
Irvine, CA 92612
Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437
rgoe@goeforlaw.com
jalvanos@goeforlaw.com

Attorneys for Debtor and Debtor-in Possession
Coto Investments, Inc.

2

3

4

5

6

7

8

## UNITED STATES BANKRUPTCY COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

## SANTA ANA DIVISION

11

12

In re:

**COTO INVESTMENTS, INC.,**

Debtor and
Debtor-in-Possession.

Case No 8:13-bk-12634-TA

Chapter 11 Proceeding

**DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED PLAN DATED OCTOBER 1, 2013; DECLARATION OF RANDY MCDUGALD IN SUPPORT THEREOF**

Disclosure Statement Hearing

DATE:    December 4, 2013
TIME:     10:00 a.m.
CTRM:    5B

Confirmation Hearing

DATE:    To Be Set
TIME:     _____ P.S.T.
CTRM:    5B

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **I. INTRODUCTION** | | **1** |
| A. | Statement In Support Of the Plan | 1 |
| B. | Purpose of this Document | 1 |
| C. | Deadlines For Voting and Objecting; Date of Confirmation Hearing | 2 |
| D. | Disclaimer | 4 |
| **II. DEFINITIONS** | | **4** |
| **III. BACKGROUND** | | **13** |
| A. | Description and History of the Debtor's Business | 13 |
| B. | Current and Future Management of the Debtor | 15 |
| C. | Events Leading to the Chapter 11 Filing | 15 |
| D. | Significant Events During the Bankruptcy | 16 |
| E. | Current and Projected Operations | 17 |
| **IV. THE PLAN** | | **18** |
| **V. SUMMARY OF THE PLAN** | | **18** |
| A. | Classification of Claims and Interests Under the Plan | 18 |
| B. | Treatment of Unclassified Claims Under the Plan | 19 |
| C. | Treatment of Classified Claims and Interests Under the Plan | 21 |
| D. | Disputed Claims | 24 |
| E. | Allowed Claims | 25 |
| F. | Reservation of Rights to Object to Claims | 25 |
| G. | Executory Contracts And Unexpired Leases | 25 |
| H. | Means of Effectuating the Plan | 27 |
| I. | Proposed Deadlines For Claims and Objection to Claims | 27 |
| **VI. RISK FACTORS OF THE PLAN** | | **27** |
| **VII. DEBTOR'S LIQUIDATION ANALYSIS** | | **28** |
| **VIII. EFFECT OF CONFIRMING THE PLAN** | | **30** |
| A. | Discharge | 30 |
| B. | Revesting Of Property In Debtor | 30 |
| C. | Property Free and Clear of Claims | 30 |
| D. | Limitation of Liability. | 30 |
| E. | Injunction | 30 |
| F. | Term of Bankruptcy Injunction or Stays | 31 |
| G. | Post-Confirmation Status Report | 31 |
| H. | Final Decree | 32 |
| I. | Retention of Jurisdiction | 32 |
| **IX. GENERAL CONFIRMATION REQUIREMENTS AND PROCEDURES** | | **33** |
| A. | Who May Vote or Object | 33 |
| B. | Tax Consequences of The Plan | 35 |
| C. | Post-Confirmation Conversion/Dismissal | 36 |
| D. | Binding Effect of the Plan | 36 |
| E. | Modification of the Plan | 36 |
| F. | Feasibility | 37 |

## TABLE OF DISCLOSURE STATEMENT EXHIBITS

| **Exhibit** | **Title** |
|---|---|
| 1 | August 2013 Monthly Operating Report |
| 2 | Trailing 12-Month Profit and Loss Statement |
| 3 | Installment Plan of Redemption Agreement with the County of Santa Barbara Treasurer-Tax Collector for Pre-Petition Property Taxes |
| 4 | Five-Year Projections |
| 5 | Claims Register |

# I.

## INTRODUCTION

Coto Investments, Inc. ("Debtor") is the Debtor in this Chapter 11 Bankruptcy Case.  A Plan of Reorganization Dated October 1, 2013 has been proposed by Debtor (as may be amended) (the "Plan").  On March 25, 2013, Debtor filed its Chapter 11 bankruptcy petition pursuant to Chapter 11 of the Bankruptcy Code.  The document you are reading is the Disclosure Statement Dated October 1, 2013 ("Disclosure Statement") for the Plan.  The Bankruptcy Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose either Plan.

### A.    Statement In Support Of the Plan

This is a reorganizing Chapter 11.  The Reorganized Debtor[1] shall become the owner of all assets of the Debtor's Estate.  The Plan provides to pay Allowed Claims in full over 5 years from the Hotel's Revenues.  As to the secured creditor, CB&T, Debtor shall pay the CB&T Restated Claim over 5 years with monthly interest only payments, and a payment of the full principal owing on the 5th anniversary of the Effective Date.

**DEBTOR URGES YOU TO VOTE TO ACCEPT THE PLAN.**  The Plan affords payment in full to all Claimholders.

### B.    Purpose of this Document

This Disclosure Statement summarizes the Plan, including the treatment to creditors and interest holders, and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY TO LEARN ABOUT:**

(1)    WHO CAN VOTE OR OBJECT TO THE PLAN;

---

[1] Defined terms are those as set forth in Section II Definitions herein or otherwise defined herein.

(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;

(3)    THE DEBTOR'S HISTORY AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;

(4)    WHAT THINGS THE BANKRUPTCY COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM A PLAN;

(5)    WHAT IS THE EFFECT OF CONFIRMATION; AND

(6)    WHETHER THE PLAN IS FEASIBLE.

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as this Disclosure Statement.  If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan's provisions will govern.

The Bankruptcy Code requires a disclosure statement to contain "adequate information" concerning a plan of reorganization.  The Bankruptcy Court has approved this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.

**C.    Deadlines For Voting and Objecting; Date of Confirmation Hearing**

THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THAT PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THE CASE.

1.      **Time and Place of the Confirmation Hearing**

The hearing where the Bankruptcy Court will determine whether or not to confirm the Plan will take place on _____, **2014** at _____ (PST) in Courtroom 5B, 411 West Fourth Street, Santa Ana, CA 92701.

2.      **Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot to the Debtor by either mail, hand delivery, overnight courier, email, or facsimile.  To return your ballot by mail, hand delivery, or overnight courier, send your ballot to Robert P. Goe, Goe & Forsythe, LLP, 18101 Von Karman Avenue, Suite 510, Irvine, California 92612.  To return your ballot by email, email your ballot to *rgoe@goeforlaw.com*.  To return your ballot by facsimile, fax your ballot to (949) 955-9437.

Your ballot must be received by _____, **2013 at 5:00 p.m. (PST)** or it will not be counted.

3.      **Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Bankruptcy Court and served upon Robert P. Goe, Goe & Forsythe, LLP, 18101 Von Karman Avenue, Suite 510, Irvine, California 92612 on or before _____, **20_____ at 5:00 p.m. (PST)**.

**4.** **Identity of Person to Contact For More Information Regarding The Plan**

Any party desiring further information about the Plan should contact the party below.

---

**For the Plan:**

Goe & Forsythe, LLP
Attn: Robert P. Goe
18101 Von Karman Avenue, Ste. 510
Irvine, California 92612
Telephone:  (949) 798-2460
Email: *rgoe@goeforlaw.com*

---

**D.** **Disclaimer**

The information contained in this Disclosure Statement has not been audited or reviewed by an independent accountant and the Debtor is unable to warrant or represent that such information (financial or otherwise) is without any inaccuracies.  The Debtor believes it has made reasonable efforts, under the circumstances, to present fairly and accurately, such information and that to the best of their respective knowledge, everything stated in the Disclosure Statement is true.

**II.**

**DEFINITIONS**

1.    **"Administrative Claim"** means a Claim against the Debtor for payment of an administrative expense of a kind specified in Bankruptcy Code section 503(b) and entitled to priority under Bankruptcy Code section 507(a)(2).

2.    **"Allowed"** means a Claim that is not a Disputed Claim and, with respect to any other Claim, (a) any Claim or proof of which was timely Filed with the Court, or (b) any Claim for which a proof of claim was not timely Filed but which Claim has been listed in the Schedules as liquidated in amount and not disputed or contingent, and, in (a) and (b) above, as to which (i) during the period prior to the deadline for filing objections to Proofs of Claim in the Plan, the Claim has been allowed by a Final Order or in a settlement approved by the Confirmation Order (but only to the extent so allowed), or (ii)

after the deadline for filing objections to Proofs of Claim, either no objection to the allowance thereof

was Filed prior to the Claims objection deadline or the Claim has been allowed by a Final Order or in a

settlement approved by the Confirmation Order (but only to the extent so allowed).

3.      **"Allowed Amount"** means, when used in reference to a Claim within a particular Class, an

Allowed Claim in the specified Class or of a specified type.

4.       **"Avoidance Action(s)"** means, individually and collectively, all avoidance or recovery actions

under Bankruptcy Code sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551, and/or 553, or

under similar or related state or federal statutes and common law, including, without limitation,

fraudulent transfer or conveyance laws.

5.      **"Ballot"** means each of the ballot forms distributed with the Joint Disclosure Statement to

holders of Impaired Claims entitled to vote in connection with the solicitation of acceptances of the

Plans.

6.       **"Bankruptcy Case"** means the Bankruptcy Case of the Debtor before the Court, Case   No.

8:13-bk-12634-TA.

7.      **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified in title 11 of the

United States Code, 11 U.S.C. § 101–1532, as now in effect or hereafter amended prior to the

Confirmation of either Plan, to the extent that such amendments apply to the Bankruptcy Case.

8.      **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the

Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as

applicable to the Bankruptcy Case or proceedings therein, and the Local Rules of the Court, as

applicable to the Bankruptcy Case or proceedings therein, as the case may be.

9.      **"Bar Date"** means the date designated by the Court as the last date for filing proofs of claim or interest by non-governmental entities in the Bankruptcy Case, which was July 29, 2013.  The Bar Date for governmental entities to file proofs of claim or interest is November 29, 2013.

10.     **"Business Day"** means a day other than a Saturday, Sunday, "legal holidays" (as defined in Bankruptcy Rule 9006(a)), or other day on which commercial banks in New York City are authorized or required by Law to close.  Any event the scheduled occurrence of which would fall on a day that is not a Business Day shall be deferred until the next succeeding Business Day.

11.      **"Cash"** means effective legal tender of the United States.

12.     **"Causes of Action"** means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Estate may hold against any Person or entity, including but not limited to, those asserted in the State Court Action.

13.     **"CB&T"** means California Bank &Trust, (individually and successor-in-interest to the original lender), the holder of the first deed of trust on the Hotel.

14.     **"CB&T Action"** means the State Court Action pending in the San Diego Superior Court against Debtor and others, Case No. 37-2013-00039229-CU-CO CTL, currently stayed as against Debtor.

15.     **"CB&T Deed of Trust"** means the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing Dated August 9, 2007 between Debtor and CB&T's predecessor Vineyard Bank, N. A.

16.     **"CB&T Note"** means the Adjustable Rate Promissory Note Dated August 9, 2007 between

Debtor and CB&T's predecessor Vineyard Bank, N. A.

17.     **"CB&T Restated Claim"** means the total amount Debtor will owe CB&T pursuant to the Plan.

18.      **"Claim"** means a right, claim, cause of action, right of recovery and rights of set-off,

recoupment or counterclaim of any kind against the Debtor, whether or not asserted, as defined in

section 101(5) of the Bankruptcy Code.

19.     **"Claimholder"** means the holder of a Claim.

20.     **"Collateral"** means any property or interest in property of the Debtor's Estate that is subject to

a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under

the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

21.     **"Confirmation"** means entry by the Court of the Confirmation Order.

22.     **"Confirmation Date"** means the date of entry of the Confirmation Order.

23.     **"Confirmation Order"** means the order entered by the Court confirming either Plan under

Bankruptcy Code section 1129 and constituting an approval of all such Plan's terms, the operation or

effect of which has not been stayed, reversed, or amended and as to which order (or any revision,

modification, or amendment thereof) the time to appeal or seek review or rehearing has expired,

notwithstanding the pendency of any appeal.

24.     **"Court"** means the means the United States Bankruptcy Court for the Central District of

California, Santa Ana.

25.     **"Creditor"** means any Person who holds a Claim against the Debtor.

26.      **"Debtor"** means Coto Investments, Inc.

27.     **"Debtor's Assets"** means all property in which the Debtor holds a legal or equitable interest,

including all property described in section 541 of the Bankruptcy Code.

28.     **"Disallowed"** with reference to a Claim means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been Filed by the Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order, or otherwise deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been Filed by the Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been Filed timely or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

29.     **"Disputed"** with reference to a Claim means a Claim, or any portion thereof, that has not been Allowed pursuant to the Plan or a Final Order, and:

a.    if no Claim has been Filed, or deemed to have been Filed, by the applicable Bar Date, which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or an order of the Court;

b.    if a Claim has been Filed, or deemed to have been Filed, by the applicable Bar Date (i) a Claim for which a corresponding Claim has been listed on the Schedules as unliquidated, contingent, or disputed; (ii) a Claim for which a corresponding Claim has been listed on the Schedules as other than unliquidated, contingent, or disputed, but the amount of such Claim as asserted in the Claim varies from the amount of such Claim as listed in the Schedules; or (iii) a Claim as to which any party in interest has timely Filed an objection or request for estimation in accordance with a Plan, the Bankruptcy Code,

the Bankruptcy Rules and any orders of the Court, or which is otherwise disputed in

accordance with applicable Law; or

    c.   for which a Claim was required to be Filed by order of the Court, but as to which a

Claim was not timely or properly Filed.

30.   **"Disputed Claim Amount"** means (a) if a liquidated amount is set forth in the Proof of Claim

relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the

Disputed Claim; (ii) an amount agreed to by the parties; or (iii) if a request for estimation is Filed by

any party, the amount at which such Claim is estimated by the Court; (b) if no liquidated amount is set

forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the parties or (ii)

the amount estimated by the Court with respect to such Disputed Claim; or (c) if the Claim was listed

on the Schedules as unliquidated, contingent, or disputed and no Proof of Claim was Filed, or deemed

to have been Filed, by the applicable Bar Date and the Claim has not been resolved by written

agreement of the parties or an order of the Court, zero.

31.    **"Estate"** means the bankruptcy estate of the Debtor in this Bankruptcy Case created under

Bankruptcy Code section 541.

32.   **"Exhibit"** means, as context requires, an exhibit attached to the Disclosure Statement or  the

Plan.

33.   **"File, Filed, or Filing"** means file, filed or filing with the Court or its authorized designee in the

Bankruptcy Case.

34.   **"Final Order"** means an order of a court: (a) as to which the time to appeal, petition for writ of

certiorari, or otherwise seek appellate review or to move for re-argument, rehearing, or reconsideration

has expired and as to which no appeal, petition for writ of certiorari, or other appellate review, or

proceedings for re-argument, rehearing, or reconsideration shall then be pending; (b) as to which any

right to appeal, petition for certiorari, or move for re-argument, rehearing, or reconsideration shall have

been waived in writing by the party with such right; or (c) in the event that an appeal, writ of certiorari,

or other appellate review or re-argument, rehearing, or reconsideration thereof has been sought, which

shall have been affirmed by the highest court to which such order was appealed, from which writ of

certiorari or other appellate review or re-argument, rehearing, or reconsideration was sought, and as to

which the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate

review, and to move for re-argument, rehearing, or reconsideration shall have expired; provided,

however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or

under section 1144 of the Bankruptcy Code, or any analogous rule under the Bankruptcy Rules, may be

Filed with respect to such order shall not cause such order not to be a Final Order.

35.     **"General Unsecured Claim"** means a Claim against the Debtor that is not an Administrative

Claim, a Priority Tax Claim, or an Other Priority Claim and includes all claims related to the rejection

of any executory contract or lease under 11 U.S.C. § 365 or the terms of the Plan.

36.     **"Hotel"** means the O'Cairns Inn and Suites, an 85-room hotel, located at 940 East Ocean

Avenue, Lompoc, California 93436.

37.     **"Impaired"** when used with reference to a Claim or Interest (or Class of Claims or Interests), a

Claim or Interest (or Class of Claims or Interests) that is impaired within the meaning of Bankruptcy

Code section 1124.

38.     **"Interests"** means the legal and equitable rights of ownership in the Debtor, including without

limitation the right to share in the income, gains, losses, deductions, credit, and to receive distributions

from the Debtor, and any right to vote or participate in the management of the Debtor; for avoidance of

doubt, Interests also includes an equity security as such term is defined in the Bankruptcy Code.

39.     **"Interest Holder"** means the holder of an Interest.

40.    **"Law"** means any federal, state, local or provincial law (including common law), statute, code, ordinance, rule, regulation, executive order, administrative or judicial decision, judgment, or decree, or other requirement enacted, promulgated, issued, or entered by a governmental authority.

41.    **"Lease"** means the 95-year ground lease with the Summers Trust for the land where the Hotel operates.

42.    **"McDugald"** refers to Randy McDugald, secretary/treasurer of Debtor.

43.    **"O'Cairns"** means Tory O'Cairns, president and 100% shareholder of Debtor.

44.    **"Other Priority Claim"** means a Claim against the Debtor entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim, a Priority Tax Claim, and/or a Gap Claim.

45.    **"Person"** means person as defined in Bankruptcy Code section 101(41).

46.    **"Petition Date"** means the date on which the Debtor commenced the Bankruptcy Case.

47.    **"Priority Tax Claim(s)"** means a Claim against the Debtor entitled to priority under Bankruptcy Code section 507(a)(8).

48.    **"Pro-Rata"** means the ratio of the amount of such Claim to the aggregate amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class.

49.    **"Professional"** means any professional employed in the Bankruptcy Case pursuant to Bankruptcy Code sections 327 or 1103.

50.    **"Professional Fee Claim"** means a Claim of a Professional pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b) or 1103 for compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and prior to and including the Effective Date.

51.    **"Proof of Claim"** means the proof of claim that must be <u>filed</u> by creditors in the Bankruptcy Case on or before the Bar Date.

52.    **"Reorganized Debtor"** means, with respect to the Debtor's Plan, Debtor on and after the Effective Date.

53.    **"SB Payment Plan"** means Debtor's Installment Plan of Redemption Agreement dated April 4, 2013, with the County of Santa Barbara Treasurer-Tax Collector to repay approximately $75,000 of pre-petition, property taxes, attached hereto as **Exhibit "3"**.

54.    **"Scheduled"** means, with respect to any Claim, the status and amount, if any, of that Claim as set forth in the Schedules.

55.    **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor, as such schedules or statements have been or may be further amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or any orders of the Court.

56.    **"Summers Trust"** means Hazel Brown, trustee of the Emma Rose Summers Trust.

57.    **"Summers Trust Action"** means the action entitled HAZEL BROWN, TRUSTEE OF THE EMMA ROSE SUMMERS TRUST vs. CHARLES O'CAIRNS, an individual; THE CHARLES O'CAIRNS TRUST; COTO INVESTMENTS, INC., a California corporation; and DOES 1 through 100, inclusive filed in the Superior Court for the State of California, County of Santa Barbara, removed to this Bankruptcy Court, and dismissed by Bankruptcy Court Order entered August 5, 2013.

58.    **"Taxes"** means any and all taxes, levies, imposts, assessments, or other charges of whatever nature imposed at any time by any governmental authority or by any political subdivision or taxing authority thereof or therein and all interest, penalties, or similar liabilities with respect thereto.

59.    **"Unimpaired"** with reference to a Claim or Class means a Claim or Class that is not impaired within the meaning of Bankruptcy Code section 1124.

60.    **"Voting Deadline"** means the date and time, as fixed by an order of the Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject the Plan must be received in order to be counted.

61.    **"Voting Record Date"** means the date of entry of an order of the Court approving the Disclosure Statement.

## III.

## BACKGROUND

A.    **Description and History of Debtor's Business**

The Debtor owns and operates the Hotel through the Summers Trust Lease. The 100% owner of Debtor is O'Cairns and her husband McDugald is the secretary/treasurer.

The Hotel is subject to the CB&T Note and CB&T Deed of Trust, who has filed a Proof of Claim in the amount of $4,914,691.58.

Since the filing of the case and pursuant to the cash collateral stipulation and Orders, Debtor has paid CB&T $361,289.51. The Hotel is performing fabulously, which has allowed Debtor post-petition to pay CB&T approximately $60,000 per month on average.

Debtor was in default of the CB&T Note who was moving for a receiver, prompting the chapter 11 filing. Fortunately the economy and the hospitality industry has significantly improved as have Debtor's operations. For example, in June 2013, the Hotel had total income of $224,599.40, for July 2013, $224,834.87, and for August 2013, $233,625.61. Attached as **Exhibit "1"** is the August 2013 MOR and attached as **Exhibit "2"** is the Trailing 12-Month Profit and Loss Statement. In addition to Debtor making payments to CB&T, Debtor is keeping all other vendors current, including the Summers Trust whose monthly payment is $2,859.60.

Pre-petition, due to the economic downturn and especially in the hospitality industry, Debtor fell behind on its payments to CB&T as well as on property taxes. Debtor also suffered from employee theft as well as actions by its former manager to try to convince major corporate clients to boycott the Hotel. However, with the improved economy and especially in the hospitality industry,

Debtor's operations have vastly improved such that it will be able to fund a plan to restructure the CB&T secured claim, keep the Summers Trust Lease current, and bring the property taxes current pursuant to the SB Payment Plan with the County of Santa Barbara.  As part of the SB Payment Plan, Debtor paid $40,000 in back taxes at the time of the filing, and now has the SB Payment Plan in place to pay the remaining approximate $75,000 in back property taxes over 5 years.

Debtor has a number of corporate clients which account for approximately one-half of the Debtor's business.  Corporate clients include Space X, ULA Boeing, Lockheed Martin, Orbital Science, Shaw Environmental, and Ball Aerospace, among others.  The other half of Debtor's business is from leisure travelers.  Debtor is ranked #1 by Tripadvisors.com, which is the most popular traveler review site, of the 12 hotels in Lompoc.

Summer is the high season with Lompoc advertising the local wine industry.  The Hotel has an excellent reputation with out-of-towners who come to Lompoc just to stay at the Hotel.

Further, many corporate clients come from Space X related to the first West Coast launch at Vandenberg Air Force Base.  Space X is Debtor's largest direct bill account.

For April, spring break is a busy time and Debtor is the No. 1 tourist location in Lompoc, and fills up nearly every weekend.  Space X also did a launch in June.

In May, NASA had a big launch on May 18, 2013.  NASA officials chose the Hotel to host their social networking employees during the launch.  NASA rented out Debtor's bar area and updated Facebook and Twitter real time during the launch.  This is a huge honor and is the second event in 2013 NASA has stayed at the Hotel.  This also brought many corporate guests to stay at the Hotel who pay $40 above Debtor's rack rate per night.

For the Memorial Day weekend, the Hotel always sells completely out.  With Debtor's Tripadvisor.com rating and stellar reviews, more and more tourists are booking with Debtor, and more and more people are coming back time and time again.

Starting June 1st, room rates went up $30 per night for the summer months.  Highlights for June included the June 6 AIDS Lifestyle Bike Ride for which Debtor is already sold out.  Also, on June 26th, the Lompoc Bike Ride is held.  Debtor was nearly sold out the entire month of June 2013,

and Debtor generated room revenues in June 2013 of $224,577.90, July 2013 of $224,834.83, and August 2013 of $233,625.61.

Debtor has approximately 18 employees, and is current with all payroll and payroll taxes. Debtor's insiders, O'Cairns and her husband McDugald, are being paid a combined $5,000 per month.

As discussed above, Debtor has the Lease with the Summers Trust for the Hotel, which expires on April 1, 2071. Debtor is now current on the Lease payments. There were numerous assignments of the Lease, the last of which was recorded on December 23, 2005 assigning the Lease to Debtor.

On July 24, 2012, the Summers Trust Action was filed in State Court against Debtor and others and, thereafter, on April 15, 2013, a First Amended Complaint seeking to terminate the Lease, which Debtor removed to Bankruptcy Court on May 24, 2013, and has now been dismissed by the Bankruptcy Court. The Debtor also filed a Motion to Assume the Summers Trust Lease, which was approved by Order entered August 9, 2013, and the Lease has been formally assumed.

Debtor contends that the **Exhibit "4"** Five-Year Projection is based on reasonable assumptions and the Trailing 12-Month Profit and Loss Statement. Further, the economy continues to improve, especially in the hospitality industry providing even more support for Debtor's ability to meet its Projection.

## B.      Current and Future Management of the Debtor

McDugald is the secretary/treasurer of Debtor, who will continue to oversee operations with his wife, O'Cairns. Debtor envisions Justin Barrick will continue on as general manager.

## C.      Events Leading to the Chapter 11 Filing

Similar to many property owners, as the national financial crisis developed and spread Debtor began to experience cash flow problems and was unable to keep current on the CB&T Note, who was seeking the appointment of a receiver, thus resulting in Debtor filing its Chapter 11 petition to reorganize.

**D.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during this case:

- On March 25, 2013, Debtor filed a voluntary chapter 11 bankruptcy petition.

- On April 1, 2013, Debtor filed an emergency motion for order authorizing use of cash collateral, which was granted on April 8, 2013.

- On April 1, 2013, Debtor filed a notice of setting/increasing insider compensation for McDugald and O'Cairns, which were resolved by agreement with CB&T to pay a total of $5,000 per month.

- On April 3, 2013, Debtor filed an application to employ Goe & Forsythe, LLP as its general counsel, which the Court approved by Order entered June 4, 2013.

- On April 5, 2013, Debtor filed its cash collateral stipulation with CB&T, which has been entered and approved by this Court pursuant to numerous Orders, the latest of which was entered on September 9, 2013.

- On May 22, 2013, the Court set the Claims Bar Date for July 29, 2013 for non-governmental entities and November 29, 2013 for governmental entities.  The Court has not set the deadline for Debtor to object to claims.

- On May 24, 2013, Debtor removed the Summers Trust Action, which the Bankruptcy Court dismissed.

- On June 18, 2013, Debtor filed its Motion to Assume the Summers Trust Lease ("Lease Motion"), which the Summers Trust opposed and the Bankruptcy Court granted.

- On August 9, 2013, the Bankruptcy Court entered its Order Granting Debtor's Lease Motion and the assumption of the Lease, finding that all elements of Bankruptcy Code Section 365 had been met.

**2.    Actual and Projected Recovery of Preferential or Fraudulent Transfers and Other Litigation**

Debtor is unaware of any potential preferential or fraudulent transfers.

**3.    State Court Proceedings**

The CB&T Action is pending, which is stayed against Debtor and will be dismissed against Debtor upon Confirmation of the Plan.

**E.**     **Current and Projected Operations**

Attached hereto as **Exhibit "1"** is Debtor's August MOR, **Exhibit "2"** is Debtor's Trailing 12-Month Profit and Loss Statement, and **Exhibit "3"** is Debtor's Five-Year Projections.

Since the Petition Date, Debtor has already paid CB&T $361,289.51 in just over six (6) months pursuant to the cash collateral orders, or approximately $60,000 per month.  The Projection is based conservatively on Debtor's actual operations for the last 12 months.

/ / /

/ / /

# IV.

## THE PLAN

| Creditors | Treatment Under The Plan |
|---|---|
| Administrative Claims | Paid in full, in cash, on the Effective Date. |
| Priority Tax Claims | Paid in full over 5 years from the Petition Date. |
| Class 1<br><br>County of Santa Barbara Treasurer-Tax Collector | Paid pursuant to the SB Payment Plan. |
| Class 2<br><br>CB&T's Secured Claim on the First Deed of Trust | Paid in full with monthly interest only payments for 59 months from the Effective Date, with the remaining principal balance due on the 5th anniversary of the Effective Date. |
| Class 3<br><br>General Unsecured Claims | Paid in full in 60 equal monthly payments, with interest at the Federal Judgment Rate of 28 U.S.C. 1961, commencing on the Effective Date. |
| Class 4<br><br>Interest in Debtor | Interest holders' rights will be retained. |

# V.

## SUMMARY OF THE PLAN

**A.    Classification of Claims and Interests Under the Plan.**

**1.    Generally.**

In accordance with section 1122 of the Bankruptcy Code, Claims and Interests, other than Administrative Claims and Priority Tax Claims, shall be divided in Classes and receive such treatment as described below.  Administrative Claims and Priority Tax Claims are not placed into a voting class in the Plan; instead they are unclassified.  They are not considered impaired under either Plan and they

do not vote on either Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

> **2.      Classes Under the Plan.**

Claims against, and Interests in, the Debtor are grouped in the following Classes for purposes of the Plan in accordance with Section 1122(a) of the Bankruptcy Code:

- Class 1 – County of Santa Barbara Treasurer-Tax Collector.  This Class is Impaired.

- Class 2 – CB&T's Allowed Secured Claim.  This Class is Impaired.

- Class 3 – General Unsecured Claims.  This Class is Impaired.

- Class 4 – Interests in Debtor.  This Class is Unimpaired.

**B.      Treatment of Unclassified Claims Under the Plan**

**1.      Administrative Claims**

Administrative expenses are claims for costs or expenses of administrating Debtor's Chapter 11 case which are allowed under Section 507(a)(2).  The Code requires that all Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's known Section 507(a)(2) Administrative Claims and their treatment under the Plan.

| NAME | AMOUNT OWED | TREATMENT |
|---|---|---|
| Goe & Forsythe, LLP Debtor's Attorneys | $30,000 (estimate) | Paid in full by or on the Effective Date |
| Clerk's office fees | to be determined | Paid in full by or on the Effective Date |
| Office of U.S. Trustee Fees | to be determined | Paid in full by or on the Effective Date |
|  |  |  |

Court Approval of Fees Required

The Court must rule on all Professional Fee Claims listed in this chart before the fees will be owed by the Debtor.  For all fees except the Clerk's Office fee and the United States Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule

on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.  Debtor's members will contribute the necessary funds to pay all Allowed Professional Fee Claims.

### 2.    Priority Tax Claims

Priority Tax Claims include certain unsecured income, employment and other taxes described by Section 507(a)(8).  Each holder of an Allowed Priority Tax Claim against the Debtor shall receive, on the Effective Date, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, at the election of the Debtor, either (i) Cash payment in the amount of the holder's Allowed Priority Tax Claim; (ii) deferred Cash payments over a period not to exceed five (5) years, from the Petition Date, equal to the Allowed amount of such claim; (iii) in a manner not less favorable than the most favored unsecured claim provided for by the Plan; or (iv) such other terms as may be agreed upon by such holder and the Debtor.  The rate of interest to be paid on Priority Tax Claims paid out over a period not to exceed five (5) years from the Petition Date shall be equal to the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S. C. § 6621(c)) as of the Effective Date or such higher rate as required by 11 U.S.C. § 511(a).

Holders of Allowed Priority Tax Claims shall not be entitled to receive any payment on account of post-Petition Date interest on, or penalties with respect to or arising in connection with, such Priority Tax Claims, except as allowed by the Court, and all Claims or demands by holders of Priority Tax Claims for post-Petition Date interest or penalties thereon, except as may be allowed by the Court, shall be disallowed by the Plan and the Confirmation Order, and the holders of Priority Tax Claims shall not assess or attempt to collect any principal, interest or penalties from the Reorganized Debtor, or its assets.

Upon any payment default (after a 30-day cure period), the respective taxing authorities administrative collection powers and rights shall be reinstated as they existed prior to the Petition Date.

The City of Lompoc has a claim of approximately $247,130.67 for pre-petition Transient Occupancy Taxes.

**C.    Treatment of Classified Claims and Interests Under the Plan**

      **1.    Class 1:  Santa Barbara County Treasurer-Tax Collector Allowed Secured Claim**

| Class #1 | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| Secured Tax Claim | <u>Secured Claim of:</u> Santa Barbara County Treasurer-Tax Collector for approximately $75,000 | N | Y | To be paid in full pursuant to the SB Payment Plan over five (5) years from the Effective Date.  Santa Barbara County shall retain its statutory interest as provided by Bankruptcy Code Sections 506(b) and 511.  The Secured Claimant shall retain its lien until the secured tax is paid in full.  A failure by the Debtor to make payment to Santa Barbara County pursuant to the terms of the SB Payment Plan shall be an event of default.  If the Debtor fails to cure an event of default as to tax payments under the SB Payment Plan within 10 days after service of written notice of default or to the extent Santa Barbara County's unpaid taxes are not paid in full within five (5) years of the Effective Date, then it may enforce the entire amount of its Claim, plus all penalties and interest accrued under |

| | | | | State law against the Debtor in accordance with applicable State law remedies. |
|---|---|---|---|---|
| | | | | |

2.    **Class 2:  CB&T Secured Claim**

| **Class #2** | **Description** | **Insiders**<br><br>**(Y/N)** | **Impaired**<br><br>**(Y/N)** | **Treatment** |
|---|---|---|---|---|
| CB&T | <u>Secured Claim of:</u> CB&T <u>Basis of Debt:</u> CB&T Note and CB&T Deed of Trust <u>Collateral Description</u>: Hotel <u>Collateral Value:</u> $7,861,144.84 <u>Priority of Security Interest:</u> First priority lien on the Hotel <u>Total claim amount:</u> $4,914,691.58 (per Proof of Claim, less cash collateral payments made) | N | Y | Class 2 consists of the Secured Claim held by CB&T.  Class 2 is Impaired under this Plan because the Holder of the Allowed Class 2 Claim, although paid in full, will be paid over time pursuant to the provisions of this Plan. The Reorganized Debtor shall pay CB&T according to the following terms: (a) all late fees and interest above the non-default rate of interest provided in the CB&T Note between the Debtor and CB&T (the "Non-Default Interest Rate") will be waived and released; (b) all interest accruing, but unpaid, on the CB&T Note at the Non-Default Interest Rate and CB&T's attorneys' fees allowable under Bankruptcy Code |

| | | | | Section 506(b) shall be added to the existing principal balance owing under the CB&T Note to arrive at the CB&T Restated Claim; (c) beginning on the Effective Date, interest shall accrue on the CB&T Restated Claim at the rate of four and one-quarter percent per annum (prime of 3.25% plus 1%) (or as ordered by the Court) (the "New Interest Rate") and shall be paid monthly in arrears for 5 years from the Effective Date; and (d) the principal amount owing on the CB&T Restated Claim shall be paid in full on or before 5 years from the Effective Date.  The Holder of the Allowed Class 2 Claim will retain its lien on the Hotel as it existed prior to the Petition Date until the Reorganized Debtor has paid the Allowed Class 2 Claim in full.  In the event Debtor defaults and after a 30 day period to cure any default after written demand by CB&T, CB&T will be free to exercise its remedies under State law. |
| --- | --- | --- | --- | --- |

### 3.    Class 3:  General Unsecured Claims General Unsecured Claims

General Unsecured Claims are unsecured claims not entitled to priority under Section 507(a). The following chart identifies the Plan's treatment of the Class containing all of Debtor's allowed General Unsecured Claims.

| Class #3 | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| General Unsecured Claims | General Unsecured Claims against the Estate (approximately $115,000) | N | Y | To be paid 100% of Allowed Claim from Debtor's Revenue, with Federal Judgment Rate Interest of 28 U.S.C. § 1961, in equal monthly payments starting on the Effective Date but no later than five (5) years from the Effective Date. |

### 4.    Class 4:  Interests In Debtor

| Class #4 | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| Interest in Debtor of O'Cairns | 100% Shareholder | Y | N | All Shareholder Interests in the Debtor shall be retained. |

## D.    Disputed Claims

The Plan provides that the Reorganized Debtor will maintain a reserve for Disputed Claims. Whenever distributions are due under the terms of the Plan, the Reorganized Debtor shall, with respect to each Disputed Claim, deposit in a segregated account the amount that such Disputed Claim would have received had it been an Allowed Claim.

If a Disputed Claim is subsequently Allowed in whole or in part, the Reorganized Debtor will distribute from the reserve for Disputed Claims to the holder of such Claim the Cash that such holder

would have received on account of such Claim if such Claim had been an Allowed Claim on the Effective Date to the extent thereafter Allowed.  If a Disputed Claim is disallowed, in whole or in part, the Reorganized Debtor will not distribute the Cash reserved in respect of such disallowed Disputed Claim.

**E.      Allowed Claims**

Distributions shall only be made to holders of Allowed Claims.  No holder of a Disputed Claim will receive any distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim.  Debtor may, in its discretion, withhold distributions otherwise due hereunder to any Claimholder until such time as objections thereto may be Filed.  Any holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its distribution in accordance with the terms and provisions of this Plan and the Confirmation Order.

**F.      Reservation of Rights to Object to Claims**

Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, Debtor shall retain the right to object and shall be deemed to have reserved any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Claims and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Debtor's failure to object to any Claim in the Bankruptcy Case shall be without prejudice to Debtor's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of such Claimholder.

**G.      Executory Contracts And Unexpired Leases**

**1.      Assumptions**

The Debtor has already assumed the Summers Trust Lease pursuant to the Order entered August 9, 2013.

The Plan constitutes a motion to assume or reject all executory contracts and unexpired leases, except for those executory contracts and unexpired leases that have already been assumed or rejected

pursuant to an earlier Order of the Court or that are the subject of a motion for such an Order pending as of the Confirmation Hearing.

Prior to the date of hearing on Plan Confirmation, the Debtor will file a schedule of all executory contracts and unexpired leases to be assumed, listing the cure amount, if any, under such unexpired leases or executory contract. Any contract or lease not on that schedule shall be deemed rejected by the Debtor as of the Effective Date. Unless the non-debtor party to any such exectory contract or unexpired lease to be assumed files and serves on Debtor's counsel an objection to the cure amount specified on that schedule on or before the last date established by the Court to file and serve objections to confirmation of the Plan, such cure amount shall be forever binding on such non-debtor party to said executory contract or unexpired lease.

Except as otherwise agreed by the parties to an executory contract or unexpired lease, the Reorganized Debtor will cure any and all undisputed monetary defaults on the Effective Date under any executory contract or unexpired lease assumed pursuant to the Plan and to which it is a party, in accordance with Section 365 of the Bankruptcy Code. All disputed defaults that are required to be cured under Section 365(b)(1)(A) shall be cured either within 30 days of the entry of a Final Order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may be agreed otherwise by the parties. The Confirmation Order shall state that all executory contracts and unexpired leases that are listed on the schedule described herein are deemed assumed under the Plan and any contract or lease that is not specifically included on that list shall be deemed rejected under the Plan.

Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be Filed and served on counsel for the Debtor within thirty (30) days after the Order of the Court approving such rejection becomes a Final Order or be (i) forever barred and unenforceable against the Debtor, its Estate, the Reorganized Debtor and their respective property, and (ii) barred from receiving any distribution under the Plan. All Allowed claims arising from the rejection of executory contracts or unexpired leases shall be treated as a Class 3 General Unsecured Claim against the Debtor.

Any election of rights by a lessee under Section 365(h)(1) of the Bankruptcy Code must be Filed and served on counsel for the Debtor within thirty (30) days after the Order of the Court approving such rejection becomes a Final Order or lessee shall be deemed to have waived any and all of its rights under Section 365(h)(1).

Debtor reserves its rights to supplement this assumption list on proper notice to the counter party to such agreement(s).

**2.    Rejections**

No executory contracts or unexpired leases will be rejected.

**H.    Means of Effectuating the Plan**

**1.    Procedures Implemented to Resolve Financial Problems**

Debtor's Plan is based upon the operations of the Hotel to make all required payments under the Plan.

**2.    Proposed Post-Confirmation Management**

O'Cairns and McDugald will continue to manage the Hotel with Justin Barrick as the on-site property manager.

**3.    Disbursing Agent**

The Reorganized Debtor shall act as the disbursing agent for the purpose of making all distributions required under the Plan. The disbursing agent shall serve without bond and shall not be compensated for distribution services rendered and expenses incurred pursuant to the Plan.

**I.    Proposed Deadlines For Claims and Objection to Claims.**

The bar date for filing claims was July 29, 2013, and the Court has not set a deadline for filing objections to claims. The current Claims Register is attached hereto as **Exhibit "5"**.

**VI.**

**RISK FACTORS OF THE PLAN**

The risk involved with this Plan is that the Hotel does not continue to perform as it has, and will not provide the funding necessary to make the payments required under the Plan. In connection with

the Plan Confirmation hearing, evidence will be introduced as to the financial ability to make such payments.

## VII.

## DEBTOR'S LIQUIDATION ANALYSIS

One of the confirmation requirements is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a Claimant or Interest Holder is in an Impaired Class and that Claimant or Interest Holder does not vote to accept the Plan, then that Claimant or Interest Holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, a chapter 7 trustee usually sells a debtor's assets. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative Claims are paid next. Next, General Unsecured Claims are paid from any remaining sales proceeds, according to their rights to priority. General Unsecured Claims with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, Interest Holders receive the balance that remains after all Creditors are paid, if any.

For the Bankruptcy Court to be able to confirm a plan, the Bankruptcy Court must find that all Creditors and Interest Holders who do not accept the plan will receive at least as much under the plan as such holders would receive under a chapter 7 liquidation.

Pursuant to Section 1125 of the Bankruptcy Code an appraisal of the Property is not required for the Disclosure Statement to contain adequate information, especially, whereas here the sole Secured Creditor is Unimpaired and will be brought current and General Unsecured Claims are to be paid in full with interest. The Debtor maintains that the Best Interest Test is satisfied under the Plan. As set forth herein, liquidation will allow CB&T to foreclose thereby leaving all General Unsecured Claims with a zero percent return on their respective claims. However, under the Plan, CB&T, priority Tax claims and all General Unsecured Claims will be paid in full within 5 years from the Effective Date.

Below is the Debtor's demonstration, in balance sheet format, that all Creditors and Interest Holders will receive at least as much under the Plan as such Creditor or Interest Holder would receive under a Chapter 7 liquidation.

## ASSETS VALUED AT LIQUIDATION VALUES

| CURRENT ASSETS | |
|---|---|
| a.        Cash On Hand (all cash collateral being turned over to CB&T) | $minimal |
| b.        The Hotel | $7,861,144.84 |
| | |
| **TOTAL CURRENT ASSETS** | **$7,861,144.84** |
| | |
| Less:   Property Taxes | $75,000.00 |
| Less:   Secured Claims – CB&T | $4,914,691.58 |
| Less:   Chapter 7 trustee's fees and expenses (estimated) | $(50,000.00) |
| Less:   Chapter 11 administrative expenses | $(30,000.00) |
| Less:   Priority claims, excluding administrative claims | $(247,135.67) |
| Less:   UST fees and clerk fees | $(        0.00) |
| Less:   Debtor' claimed exemptions | $(      N/A) |
| **(1) Balance for unsecured claims** | **$(        0.00)** |
| **(2) Total amount of General Unsecured Claims** | **Approx. $115,000.00[2]** |
| **% OF THEIR CLAIMS WHICH GENERAL UNSECURED CLAIMS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION:** | 0% |
| **% OF THEIR CLAIMS WHICH GENERAL UNSECURED CLAIMS WILL RECEIVE OR RETAIN UNDER THIS PLAN:** | 100% |

Below is a demonstration, in tabular format, that all Creditors and Interest Holders will receive at least as much under the Plan as such Creditor or Interest Holder would receive under a Chapter 7 liquidation.

---

[2] This amount includes approximately $76,853.25 in disputed Labor Claims, of which Debtor recently became aware and will likely be challenging.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Chapter 7 and 11 Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 – Santa Barbara County Treasurer-Tax Collector | 100% | 100% |
| Class 2 – CB&T Allowed Secured Claim | 100% | Foreclosure |
| Class 3 – General Unsecured Claims | 100% | 0% |
| Class 4 – Interests in Debtor | Retain Interests | 0% |

# VIII.

# EFFECT OF CONFIRMING THE PLAN

**A.    Discharge**

This Plan provides that upon Confirmation of the Plan, Debtor shall be discharged of liability for payment of debts incurred before Confirmation of the Plan to the extent specified in Section 1141. However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting Of Property In Debtor**

The Confirmation of the Plan revests all of the property of the Estate in the Reorganized Debtor**.**

**C.    Property Free and Clear of Claims**

Except as provided herein to the contrary, all property of the Estate distributed under the Plan shall be distributed free and clear of all Claims of all Claimants, Interest Holders, parties-in-interest and other entities.

**D.    Limitation of Liability**

The Debtor, its members and Debtor's counsel, shall have all of the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law.

**E.    Injunction**

As set forth in the Plan, certain claims are discharged, released, and/or otherwise limited (collectively, the "Restricted Claims") by Plan.  From and after the Effective Date, all Persons are

hereby permanently enjoined from pursuing these Restricted Claims against the Debtor or any of their respective property, including:

(A)    commencing or continuing, in any manner or in any place any action or other proceeding on account of such Restricted Claims;

(B)    enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order on account of such Restricted Claims;

(C)    creating, perfecting or enforcing any lien, lis pendens, or other encumbrance against their property on account of such Restricted Claims;

(D)    asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Debtor on account of such Restricted Claims; and

(E)    pursuing any Claim against the Debtor which has been satisfied by the Plan, including any claims of the Summers Trust.  Further, any notice of default or trustee sale shall be rescinded promptly by CB&T being cured and the CB&T Action shall be dismissed as against Debtor.

**F.    Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Bankruptcy Case under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Upon the Effective Date, the injunction provided in Article I. above shall apply

**G.    Post-Confirmation Status Report**

Within one-hundred twenty (120) days of the entry of the Confirmation Order, Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the Office of the United States Trustee, the twenty (20) largest unsecured creditors, and those parties who have requested special notice.  Further status reports shall be filed every one- hundred twenty (120) days and served on the same entities.

**H.    Final Decree**

Once the estate has been fully administered as referred to in Federal Rule of Bankruptcy Procedure 3022, the Reorganized Debtor, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

**I.    Retention of Jurisdiction**

Notwithstanding Confirmation, the Court shall retain jurisdiction for all of the following purposes plus such other purposes as may be provided by the Code:

1.    The determination of requests for payment of Claims entitled to priority under Section 507 including all applications of professionals for compensation;

2.    Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease;

3.    The resolution of any disputes regarding the interpretation, enforcement, breach, performance and/or a default under this Plan;

4.    The implementation, execution or consummation of the provisions of this Plan (and any dispute with regard thereto) and entry of orders in aid of consummation or enforcement of this Plan, including without limitation, appropriate Orders to effect the provisions of this Plan and to protect the Disbursing Agent from Creditors' actions;

5.    Objections to any and all claims filed;

6.    Determination of any avoidance action or other litigation before the Court;

7.    The adjudication of any challenge to an allowed Claim by any party-in-interest based on evidence as may be obtained subsequent to the confirmation of the Plan.  The Debtor reserves the right to challenge thusly all allowed Claims subsequent to the entry of the Order of Confirmation.

8.    The modification of this Plan pursuant to Section 1127; and

9.    The entry of a final decree closing this Chapter 11 case.

# IX.

## GENERAL CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.

Many requirements must be met before the Bankruptcy Court can confirm a plan.  Some of the requirements include that a plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

**A.    Who May Vote or Object**

**1.    Who May Object To Confirmation?**

Any party in interest may object to the confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

**2.    Who May Vote on the Plan?**

A creditor has a right to vote for or against the Plan if that creditor has a claim which is both: (1) Allowed or Allowed for voting purposes; and (2) Classified in an Impaired Class.

**a.    What Is an Allowed Claim/Interest**

As noted above, a creditor must first have an <u>Allowed Claim or Interest</u> to have the right to vote.  Generally, any Proof of Claim will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the Claim or Interest cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the Claim or Interest for voting purposes.

The **Bar Date** for filing a Proof of Claim in this case for non-governmental entities was July 29, 2013, and November 29, 2013 for governmental entities.  The Court has not set a deadline for filing objections to claims.  A Creditor may have an allowed Claim even if a Proof of Claim was not timely

filed.  A Claim is deemed allowed if: (1) it is scheduled on the Debtor's Schedules and such claim is not Scheduled as Disputed, Contingent, or Unliquidated; and (2) no party in interest has objected to the Claim.

        **b.**        **What Is an Impaired Claim/Interest**

As noted above, the holder of an allowed Claim only has the right to vote if it is in a class that is <u>Impaired</u> under the Plan.  A class is Impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

The Debtor believes Classes 1, 2 and 3 are Impaired and can vote.

Parties who dispute the characterization of their Claim or Interest as being Impaired or Unimpaired may file an objection to the respective Plan contending that the Plan incorrectly characterizes the class.

        **3.**        **Who Is Not Entitled To Vote**

The following four (4) types of claims are <u>not</u> entitled to vote: (1) Claims that have been disallowed; (2) Claims in Unimpaired Classes; (3) Claims entitled to priority pursuant to sections 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code; and (4) Claims in classes that do not receive or retain any value under a plan.  Claims in Unimpaired classes under a plan are not entitled to vote because such classes are deemed to have accepted such plan.  Claims entitled to Priority pursuant to sections 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code are not entitled to vote because such Claims are not placed in classes and they are required to received certain treatment specified by the Bankruptcy Code.  Claims in classes that do not receive or retain any value under a plan do not vote on such plan because such classes are deemed to have rejected the plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

        **4.**        **Who Can Vote In More Than One Class**

No creditor in this case can vote in more than one class of the Plan.

**5.      Votes Necessary To Confirm a Plan**

The Bankruptcy Court cannot confirm a plan unless: (1) at least one Impaired class has accepted the Plan without counting the votes of any insiders within that class; and (2) all Impaired classes have voted to accept the Plan, unless that plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

**6.      Votes Necessary for a Class To Accept a Plan**

A class of Claims is considered to have accepted a plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims which actually voted, voted in favor of the plan.

**7.      Treatment of Non-Accepting Classes**

As noted above, even if a particular impaired class does not accept the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code.  The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Code allows the plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of section 1129(a) (8) and if the plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the plan as referred to in section 1129(b) and applicable case law.  In addition, at least one Impaired class must have voted to accept the plan (excluding the vote of insiders).

**8.      Request For Confirmation Despite Non-Acceptance by Impaired Class(es)**

The Debtor intends to move the Bankruptcy Court to confirm its Plan by cramdown as to all Classes that are Impaired and, thus, have not accepted the Plan.

**B.      Tax Consequences of The Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.  The Debtor CANNOT and DOES NOT represent what tax

consequences may result from the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action, if any.

## C.    Post-Confirmation Conversion/Dismissal

A Creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed but before the Effective Date, if there is a default in the performance of the Plan.  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this Case.

The Order confirming the Plan may also be revoked under very limited circumstances.  The Court may revoke the Order if the Order of confirmation was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after entry of the order of confirmation.

## D.    Binding Effect of the Plan

Once confirmed, the provisions of the Plan shall be binding upon each Claimant and Interest Holder, whether or not the Claim of such Claimant or Interest of such Interest Holder is Impaired under the Plan, and whether or not such Claimant or Interest Holder accepted the Plan.  No action may be taken by any secured creditor to foreclose on the Debtor's Assets, or any portion thereof, unless and until this case is either dismissed or converted to one under Chapter 7 and relief from stay is obtained.

## E.    Modification of the Plan

The Plan may be modified at any time before the Confirmation Date.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on such Plan.  The Debtor may also seek to modify the Plan at any time after Confirmation only if: (1) the Plan has not been substantially consummated; and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**F.      Feasibility**

To confirm either Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to Debtor under the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether there will be enough cash on hand on the Effective Date of a plan to pay all the claims and expenses which are entitled to be paid on such date.  The second aspect considers whether the reorganized entity will have enough cash left over to make the required payments under its respective Plan.

With respect to the first test of feasibility, the only Effective Date payment will be to Debtor's counsel for its Administrative Claim, and Debtor shall have sufficient cash on hand.  The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required monthly Plan payments.  Debtor's Projection show that Debtor will be averaging over $40,000 per month of Net Operating Income, while Debtor anticipates the monthly payment to CB&T will only be approximately $25,000 and, therefore, Debtor will be able to cover all monthly payments due CB&T and the other creditors.  In 2019 when the CB&T Note matures, the Hotel will be sold or refinanced to pay CB&T's principal amount owing.

Dated:  October 1, 2013

| GOE & FORSYTHE, LLP <br><br>BY: */s/ Robert P. Goe*_____<br>ROBERT P. GOE<br>ATTORNEYS FOR DEBTOR AND DEBTOR-<br>IN-POSSESSION | |

## DECLARATION OF RANDY MCDUGALD

I, Randy McDugald, hereby declare:

1.     I am the secretary/treasurer of the Debtor and Debtor-in-Possession herein (the "Debtor").  I have personal knowledge of the facts stated herein, and if called upon to testify, I could and would competently and truthfully testify thereto.

2.     I have personal knowledge of Debtor's finances.  I have reviewed Debtor's Disclosure Statement Describing Debtor's Chapter 11 Plan of Reorganization Dated October 1, 2013 (the "Disclosure Statement").

3.     All statements and representations made in the Disclosure Statement are truthful and accurate and I support approval of the same.

I declare under penalty of perjury under the laws of the state of California and United States of America, that the foregoing is true and correct

EXECUTED this 1st day of October 2013 at Aliso Viejo, California.

_____
Randy McDugald

# EXHIBIT 1

# EXHIBIT 1

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

| In Re:<br>Coto Investments, Inc.<br>dba O'Cairns Inn & Suites<br>940 E Ocean Ave.<br>Lompoc, CA 93436                Debtor(s). | CHAPTER 11 (BUSINESS) | |
|---|---|---|
| | Case Number: | 8:13-bk-12634 |
| | Operating Report Number: | 6 |
| | For the Month Ending: | **August 31, 2013** |

## I. CASH RECEIPTS AND DISBURSEMENTS
## A. (GENERAL ACCOUNT*)

1. TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS                                882,082.75

2. LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL                                903,678.19
ACCOUNT REPORTS

3. BEGINNING BALANCE:                                82,244.33

4. RECEIPTS DURING CURRENT PERIOD **:
   Accounts Receivable - Post-filing
   Accounts Receivable - Pre-filing
   General Sales                                192,997.41
   Other-adjustment for voided checks                                0.00

   TOTAL RECEIPTS THIS PERIOD:                                192,997.41

5. BALANCE:                                275,241.74

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
   Transfers to Other DIP Accounts (from page 2)                                61,749.78
   Disbursements (from page 2)                                103,218.14

   TOTAL DISBURSEMENTS THIS PERIOD:***                                164,967.92

7. ENDING BALANCE:                                110,273.82

8. General Account Number(s):                                **xxxxxxxx81051**
                                                              JPMorgan Chase Bank, N.A.
   Depository Name & Location:                                PO Box 659754
                                                              San Antonio, TX 78265-9754

\*   All receipts must be deposited into the general account.

\** Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold,
    to whom, terms, and date of Court Order or Report of Sale.

\***This amount should be the same as the total from page 2.

| No | | | | | | |
|---|---|---|---|---|---|---|
| | | TOTAL DISBURSEMENTS FROM CURRENT ACCOUNT (MUST PERIOD) | Main Document | | | |

| Date mm/dd/yyyy | Check Number | Payee or DIP account | Purpose | *Amount Transfered | **Amount Disbursed | Amount |
|---|---|---|---|---|---|---|
| 08/01/2013 | 2238 | Siobhan Melatti | Rent | | 1,475.00 | 1,475.00 |
| 08/03/2013 | 1023 | Albertson's | -SPLIT- | | 3,000.00 | 3,000.00 |
| 08/05/2013 | EFT | Bank of America | Office Supplies | | 126.81 | 126.81 |
| 08/06/2013 | EFT | Booking.com B.V. | Commission | | 1,842.60 | 1,842.60 |
| 08/07/2013 | EFT | Golden Eagle Insurance | Work Comp | | 4,738.75 | 4,738.75 |
| 08/09/2013 | 1017 | California Bank & Trust | California Bank & Trust | | 25,000.00 | 25,000.00 |
| 08/09/2013 | 1018 | Goe & Forsythe | Legal Fees | | 10,000.00 | 10,000.00 |
| 08/09/2013 | 1020 | Costco | -SPLIT- | | 3,828.54 | 3,828.54 |
| 08/09/2013 | 2239 | Ecolab | Cleaning Supplies | | 1,212.90 | 1,212.90 |
| 08/09/2013 | 2240 | TravelNow.Com, Inc | Commission | | 121.60 | 121.60 |
| 08/09/2013 | 2241 | CI Travel | Commission | | 60.50 | 60.50 |
| 08/09/2013 | 2242 | World Travel, Inc | Commission | | - | - |
| 08/09/2013 | 2243 | World Travel, Inc | Commission | | 121.00 | 121.00 |
| 08/09/2013 | 2244 | Polk Corporate Travel Management | Commission | | 24.20 | 24.20 |
| 08/09/2013 | 2245 | Polk Corporate Travel Management | Commission | | 72.60 | 72.60 |
| 08/09/2013 | 2246 | Polk Corporate Travel Management | Commission | | 278.30 | 278.30 |
| 08/09/2013 | 2247 | Polk Corporate Travel Management | Commission | | 72.60 | 72.60 |
| 08/09/2013 | 2248 | Polk Corporate Travel Management | Commission | | 24.20 | 24.20 |
| 08/09/2013 | 2249 | TravelCorp International | Commission | | 12.10 | 12.10 |
| 08/09/2013 | 2250 | TravelCorp International | Commission | | 24.20 | 24.20 |
| 08/09/2013 | 2251 | TravelCorp International | Commission | | 24.20 | 24.20 |
| 08/09/2013 | 2252 | World Travel, Inc | Commission | | 48.95 | 48.95 |
| 08/09/2013 | 2253 | Adelman Travel Group | Commission | | 278.30 | 278.30 |
| 08/09/2013 | 2254 | CI Travel | Commission | | - | - |
| 08/09/2013 | 2255 | Omega World Travel | Commission | | 24.20 | 24.20 |
| 08/09/2013 | 2256 | Omega World Travel | Commission | | 12.10 | 12.10 |
| 08/09/2013 | 2257 | Expedia Inc | Commission | | 13.00 | 13.00 |
| 08/09/2013 | 2258 | BCD Travel | Commission | | 108.90 | 108.90 |
| 08/09/2013 | 2259 | BCD Travel | Commission | | 12.10 | 12.10 |
| 08/09/2013 | 2260 | BCD Travel | Commission | | 12.10 | 12.10 |
| 08/09/2013 | 2261 | American Express Finance Center | Commission | | 12.10 | 12.10 |
| 08/09/2013 | 2262 | Direct TV | Cable | | 430.78 | 430.78 |
| 08/09/2013 | 2263 | The Berry Man, Inc | Food | | 1,303.65 | 1,303.65 |
| 08/09/2013 | 2264 | Compston Pressure Washing | Repairs | | 325.00 | 325.00 |
| 08/09/2013 | 2265 | Pacific Beverage | Beverage | | 72.15 | 72.15 |
| 08/09/2013 | 2266 | City of Lompoc Transient Occupancy T | Room Tax | | 34.30 | 34.30 |
| 08/09/2013 | 2267 | Fed EX | Postage and Delivery | | 222.41 | 222.41 |
| 08/09/2013 | 2268 | Reliable Repairs | Building Repairs | | 268.30 | 268.30 |
| 08/09/2013 | 2269 | Alejandro Ruiz | Landscaping | | 1,290.00 | 1,290.00 |
| 08/09/2013 | 2270 | Pacific Beverage | Beverage | | 430.00 | 430.00 |
| 08/09/2013 | 2271 | Pacific Beverage | Beverage | | 279.00 | 279.00 |
| 08/09/2013 | 2272 | City Appliance | Equipment Repairs | | 290.71 | 290.71 |
| 08/09/2013 | 2273 | Polar Bear Service, LLC | Repairs | | 113.75 | 113.75 |
| 08/09/2013 | 2274 | Polar Bear Service, LLC | Repairs | | 153.41 | 153.41 |
| 08/09/2013 | 2275 | Polar Bear Service, LLC | Repairs | | 95.00 | 95.00 |
| 08/09/2013 | 2276 | Polar Bear Service, LLC | Repairs | | 170.00 | 170.00 |
| 08/09/2013 | 2277 | Professional Pool and Spa | Pool Repairs | | 334.60 | 334.60 |
| 08/09/2013 | 2278 | Tognazzini | Beverage | | 75.51 | 75.51 |
| 08/09/2013 | 2279 | Comcast | Management | | 377.87 | 377.87 |
| 08/09/2013 | 2280 | HD Supply | Supplies | | 1,033.90 | 1,033.90 |
| 08/09/2013 | 2281 | Justin Barrick | Milage Reimbursement | | 117.04 | 117.04 |
| 08/09/2013 | 2282 | Mi Amore Pizza | Guest Amenities | | 1,294.43 | 1,294.43 |
| 08/09/2013 | 2284 | Hospitality Plus Unlimited | Advertising | | 600.00 | 600.00 |
| 08/09/2013 | 2285 | Office of the U. S. Trustee | -SPLIT- | | 4,550.00 | 4,550.00 |
| 08/09/2013 | 2286 | Tognazzini | Beverage | | 170.60 | 170.60 |
| 08/14/2013 | EFT | Bank of America | Office Supplies | | 419.57 | 419.57 |
| 08/16/2013 | 1019 | Emma Rose Summer Trust | Rent | | 5,719.20 | 5,719.20 |
| 08/16/2013 | EFT | Southern Wine & Spirits | Beverage | | 2,166.25 | 2,166.25 |
| 08/21/2013 | EFT | Sysco Food Service | Food | | 13,293.24 | 13,293.24 |
| 08/22/2013 | 1022 | PG&E | Management | | 107.53 | 107.53 |
| 08/23/2013 | 2287 | Emma Rose Summer Trust | Rent | | 2,859.60 | 2,859.60 |
| 08/23/2013 | 2288 | Lorrie Davellia | Accounting | | 300.00 | 300.00 |
| 08/23/2013 | 2289 | City of Lompoc | Gas and Electric | | 7,222.55 | 7,222.55 |
| 08/23/2013 | 2290 | Mobile Mini, Inc | Equipment Rental | | 197.41 | 197.41 |
| 08/23/2013 | 2291 | ReleVenture, Inc | Bookkeeping | | 382.50 | 382.50 |
| 08/23/2013 | 2292 | Nargan Fire & Safety Co., Inc | Equipment Repairs | | 158.20 | 158.20 |
| 08/23/2013 | 2293 | Walnut Pier Health Club | Guest Amenities | | 225.00 | 225.00 |
| 08/23/2013 | 2294 | The Gas Comapny | Management | | 18.14 | 18.14 |
| 08/23/2013 | 2295 | Mission Linen | Utilities | | 391.71 | 391.71 |
| 08/23/2013 | 2296 | The Gas Comapny | Gas and Electric | | 307.44 | 307.44 |
| 08/23/2013 | 2297 | USA Today | Dues and Subscriptions | | 238.46 | 238.46 |
| 08/23/2013 | 2298 | Home Depot | Repairs | | 1,437.00 | 1,437.00 |
| 08/23/2013 | Voids | | Work Comp | | (39,738.75) | (39,738.75) |
| 08/29/2013 | EFT | Bank of America | -SPLIT- | | 335.79 | 335.79 |
| 08/30/2013 | 1024 | Vandenberg First Sergents | Promotional | | 500.00 | 500.00 |
| 08/31/2013 | 1027 | The Gas Comapny | Gas and Electric | | 517.81 | 517.81 |
| 08/31/2013 | 2299 | California Bank & Trust | California Bank & Trust | | 25,000.00 | 25,000.00 |
| 08/31/2013 | 2300 | Goe & Forsythe | Legal Fees | | 10,000.00 | 10,000.00 |
| 08/31/2013 | EFT | transfer | Tax Checking 1069 | 28,947.91 | | 28,947.91 |
| 08/31/2013 | EFT | transfer | Payroll Checking 1077 | 32,801.87 | | 32,801.87 |
| 08/31/2013 | EFT | Chase Bank | Bank Service Charges | | 7,404.83 | 7,404.83 |
| 08/31/2013 | Voids | | Rent | | (2,859.60) | (2,859.60) |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | 61,749.78 | 103,218.14 | 164,967.92 |

* Fill in amounts in this column if they are TRANSFERS to another DIP account (e.g. Payroll or Tax); the "amount" column will be filled in for you.

** Fill in amounts in this column if they are DISBURSEMENTS to outside payees; the "amount" column will be filled in for you.

GENERAL ACCOUNT
BANK RECONCILIATION

| Bank statement Date: | 8/31/2013 | Balance on Statements: # | $180,726.67 |

Plus deposits in transit (a):

| | Deposit Date | Deposit Amount | |
|---|---|---|---|
| | | | |
| TOTAL DEPOSITS IN TRANSIT | | | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| 2007 | 4/19/2013 | 5,000.00 |
| 2228 | 7/26/2013 | 7,243.97 |
| 2246 | 8/9/2013 | 278.30 |
| 2253 | 8/9/2013 | 278.30 |
| 2240 | 8/9/2013 | 121.60 |
| 2243 | 8/9/2013 | 121.00 |
| 2258 | 8/9/2013 | 108.90 |
| 2247 | 8/9/2013 | 72.60 |
| 2245 | 8/9/2013 | 72.60 |
| 2241 | 8/9/2013 | 60.50 |
| 2252 | 8/9/2013 | 48.95 |
| 2248 | 8/9/2013 | 24.20 |
| 2244 | 8/9/2013 | 24.20 |
| 2250 | 8/9/2013 | 24.20 |
| 2255 | 8/9/2013 | 24.20 |
| 2251 | 8/9/2013 | 24.20 |
| 2257 | 8/9/2013 | 13.00 |
| 2260 | 8/9/2013 | 12.10 |
| 2249 | 8/9/2013 | 12.10 |
| 2256 | 8/9/2013 | 12.10 |
| 2259 | 8/9/2013 | 12.10 |
| 2261 | 8/9/2013 | 12.10 |
| 1019 | 8/16/2013 | 5,719.20 |
| 2289 | 8/23/2013 | 7,222.55 |
| 2287 | 8/23/2013 | 2,859.60 |
| 2298 | 8/23/2013 | 1,437.00 |
| 2288 | 8/23/2013 | 300.00 |
| 2297 | 8/23/2013 | 238.46 |
| 2290 | 8/23/2013 | 197.41 |
| 1024 | 8/30/2013 | 500.00 |
| 2299 | 8/31/2013 | 25,000.00 |
| 2300 | 8/31/2013 | 10,000.00 |
| 1027 | 8/31/2013 | 517.81 |
| EFT | 8/31/2013 | 2,859.60 |

| TOTAL OUTSTANDING CHECKS: | | | 70,452.85 |

Bank statement Adjustments:
Explanation of Adjustments-

| | | |
|---|---|---|
| | | |

| ADJUSTED BANK BALANCE: | | | $ | 110,273.82 |

\* It is acceptable to replace this form with a similar form                    0.00

\*\* Please attach a detailed explanation of any bank statement adjustment

I. CASH RECEIPTS AND DISBURSEMENTS
B. (PAYROLL ACCOUNT)

1.  TOTAL RECEIPTS PER ALL PRIOR PAYROLL ACCOUNT REPORTS     117,786.84

2.  LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR PAYROLL     117,801.84
ACCOUNT REPORTS

3.  BEGINNING BALANCE:     (15.00)

4.  RECEIPTS DURING CURRENT PERIOD:     32,801.87

5.  BALANCE:     32,786.87

6.  LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
       TOTAL DISBURSEMENTS THIS PERIOD:***     32,801.87

7.  ENDING BALANCE:     (15.00)

8.          PAYROLL Account Number(s):  **000000418981077**

| | |
|---|---|
| | JPMorgan Chase Bank, N.A. |
| Depository Name & Location: | PO Box 659754 |
| | San Antonio, TX 78265-9754 |

TOTAL DISBURSEMENTS FROM PAYROLL ACCOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| 08/07/2013 | EFT | Salas, Meghan | Payroll | 206.46 |
| 08/09/2013 | 2209 | Anderson, Ronen L | Payroll | 762.75 |
| 08/09/2013 | 2187 | Arellano, Teresa | Payroll | 704.64 |
| 08/09/2013 | 2211 | Barajas, Casey J | Payroll | 771.58 |
| 08/09/2013 | 2213 | Barrick, Danica R | Payroll | 792.71 |
| 08/09/2013 | 2190 | Casillas, Maria | Payroll | 598.91 |
| 08/09/2013 | 2191 | Cerda, Amparo | Payroll | 609.09 |
| 08/09/2013 | 2210 | Davidson, Justin L | Payroll | 820.02 |
| 08/09/2013 | 2193 | Federici, Abby L | Payroll | 374.54 |
| 08/09/2013 | 2194 | Kelly, Patirck M | Payroll | 656.00 |
| 08/09/2013 | 2195 | Lara, Erica | Payroll | 708.10 |
| 08/09/2013 | 2196 | Lara, Gloria | Payroll | 648.67 |
| 08/09/2013 | 2197 | Lara, Rosa M | Payroll | 744.50 |
| 08/09/2013 | 2212 | Osborne, Elizabeth A | Payroll | 909.32 |
| 08/09/2013 | 1001 | Salas, Meghan | Payroll | 408.03 |
| 08/09/2013 | 2214 | Stroud, Angela L | Payroll | 388.93 |
| 08/09/2013 | 2201 | Barrick, Justin L | Payroll | 1,352.05 |
| 08/09/2013 | 2202 | de Silva, Desirae E | Payroll | 694.16 |
| 08/09/2013 | 2203 | Eckersley, Lindsey L | Payroll | 626.34 |
| 08/09/2013 | 2204 | McDugald, Randy R | Payroll | 1,092.39 |
| 08/09/2013 | 2205 | O'Cairns, Tory H | Payroll | 1,141.88 |
| 08/09/2013 | 2206 | Standring, Kaitlyn A | Payroll | 591.18 |
| 08/09/2013 | 2207 | California State Disbursment Unit | Garnishment | 92.30 |
| 08/09/2013 | 2208 | Support Payment Clearinghouse | Garnishment | 92.96 |
| 08/14/2013 | 1002 | Michael Parr | Payroll | 405.00 |
| 08/22/2013 | 1004 | de Silva, Desirae E | Payroll | 694.16 |
| 08/23/2013 | 2215 | Barajas, Casey J | Payroll | 365.40 |
| 08/23/2013 | 2216 | Anderson, Ronen L | Payroll | 696.54 |
| 08/23/2013 | 2217 | Arellano, Teresa | Payroll | 624.11 |
| 08/23/2013 | 2218 | Barajas, Casey J | Payroll | 638.99 |
| 08/23/2013 | 2221 | Casillas, Maria | Payroll | 525.67 |
| 08/23/2013 | 2222 | Cerda, Amparo | Payroll | 579.12 |
| 08/23/2013 | 2223 | Davidson, Justin L | Payroll | 729.78 |
| 08/23/2013 | 2226 | Federici, Abby L | Payroll | 323.38 |
| 08/23/2013 | 2227 | Garrison, Thomas C | Payroll | 217.31 |
| 08/23/2013 | 1003 | Lara, Erica | Payroll | 657.72 |
| 08/23/2013 | 2230 | Lara, Gloria | Payroll | 633.33 |
| 08/23/2013 | 2231 | Lara, Rosa M | Payroll | 936.34 |
| 08/23/2013 | 2236 | Stroud, Angela L | Payroll | 303.24 |
| 08/23/2013 | 2237 | Tinsley, Zoniia | Payroll | 89.52 |
| 08/23/2013 | 2219 | Barrick, Danica R | Payroll | 743.12 |
| 08/23/2013 | 2220 | Barrick, Justin L | Payroll | 1,352.04 |
| 08/23/2013 | 2224 | de Silva, Desirae E | Payroll | 694.16 |
| 08/23/2013 | 2225 | Eckersley, Lindsey L | Payroll | 626.34 |
| 08/23/2013 | 2228 | Kelly, Patirck M | Payroll | 656.00 |
| 08/23/2013 | 2232 | McDugald, Randy R | Payroll | 1,092.38 |
| 08/23/2013 | 2233 | O'Cairns, Tory H | Payroll | 1,141.87 |
| 08/23/2013 | 2234 | Osborne, Elizabeth A | Payroll | 852.46 |
| 08/23/2013 | 2235 | Standring, Kaitlyn A | Payroll | 591.18 |
| 08/23/2013 | 2238 | California State Disbursment Unit | Garnishment | 92.30 |
| 08/23/2013 | 2239 | Support Payment Clearinghouse | Garnishment | 92.96 |
| 08/27/2013 | 1005 | Federici, Abby L | Payroll | 264.92 |
| 08/27/2013 | 1006 | Tinsley, Zoniia | Payroll | 380.02 |
| 08/31/2013 | EFT | Chase Bank | Service Charge | 15.00 |
| | | | | |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | 32,801.87 |

PAYROLL ACCOUNT
BANK RECONCILIATION

Bank statement Date: _____8/31/2013_____      Balance on Statement: _____$1,229.30_____

Plus deposits in transit (a):

|  | Deposit Date | Deposit Amount |  |
|---|---|---|---|
|  | _____ | _____ |  |
|  | _____ | _____ |  |
|  | _____ | _____ |  |
|  | _____ | _____ |  |
|  | _____ | _____ |  |

TOTAL DEPOSITS IN TRANSIT                                          | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| 1005 | 08/27/2013 | 264.92 |
| 2226 | 08/23/2013 | 323.38 |
| 2228 | 08/23/2013 | 656.00 |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                   | 1,244.30 |

Bank statement Adjustments:                                   _____
Explanation of Adjustments-

|  |
|---|
|  |

ADJUSTED BANK BALANCE:                                     | ($15.00) |

* It is acceptable to replace this form with a similar form                                    0.00
** Please attach a detailed explanation of any bank statement adjustment

I. CASH RECEIPTS AND DISBURSEMENTS
B. (TAX ACCOUNT)

1. TOTAL RECEIPTS PER ALL PRIOR TAX ACCOUNT REPORTS                         104,582.38

2. LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR TAX                              82,478.33
ACCOUNT REPORTS

3. BEGINNING BALANCE:                                                           (15.00)

4. RECEIPTS DURING CURRENT PERIOD:                                          28,947.91

5. BALANCE:                                                                  28,932.91

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
              TOTAL DISBURSEMENTS THIS PERIOD:***                            28,947.91

7. ENDING BALANCE:                                                             (15.00)

8.              TAX Account Number:        000000418981069
                                           JPMorgan Chase Bank, N.A.
                Depository Name & Location: PO Box 659754
                                           San Antonio, TX 78265-9754

## TOTAL DISBURSEMENTS FROM TAX ACCOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| 8/14/2013 | E-pay | Chase | IRS Tax Payment | 3,358.38 |
| 8/9/2013 | 2006 | City of Lompoc Transient Occupancy Tax | Room Tax | 21,385.26 |
| 8/28/2013 | E-pay | Chase | IRS Tax Payment | 3,269.62 |
| 8/14/2013 | E-pay | Employment Development Department | Payroll Taxes | 235.73 |
| 8/14/2013 | E-pay | Employment Development Department | Payroll Taxes | 234.71 |
| 8/31/2013 | E-pay | Employment Development Department | Payroll Taxes | 221.14 |
| 8/31/2013 | E-pay | Employment Development Department | Payroll Taxes | 228.07 |
| 8/31/2013 | E-pay | Chase | Bank Fees | 15.00 |
| | | | | |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | 28,947.91 |

TAX ACCOUNT
BANK RECONCILIATION

Bank statement Date:          8/31/2013          Balance on Statement:          ($15.00)

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                                        0.00

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                        0.00

Bank statement Adjustments:                          _____
Explanation of Adjustments-

ADJUSTED BANK BALANCE:                                        ($15.00)

* It is acceptable to replace this form with a similar form                          $0.00
** Please attach a detailed explanation of any bank statement adjustment

I. D. SUMMARY SCHEDULE OF CASH

ENDING BALANCES FOR THE PERIOD:

(Provide a copy of monthly account statements for each of the below)

| | |
|---|---|
| General Accounts: | 110,273.82 |
| Payroll Account: | (15.00) |
| Tax Account: | (15.00) |

*Other Accounts:

_____   _____

_____   _____

_____   _____

*Other Monies:

_____

| **Petty Cash (see below): | 0.00 |
|---|---|

TOTAL CASH AVAILABLE:                                    110,243.82

Petty Cash Transactions:

| Date | Purpose | Amount |
|---|---|---|
| _____ | Opening balance | 0.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

TOTAL PETTY CASH TRANSACTIONS:                          0.00
ENDING PETTY CASH                                       0.00

* Specify the Type of holding (e.g. CD, Savings Account, Investment Security), and the depository name, location & account #
** Attach Exhibit Itemizing all petty cash transactions

## II. STATUS OF PAYMENTS TO SECURED CREDITORS, LESSORS, AND OTHER PARTIES TO EXECUTORY CONTRACTS

| Creditor, Lessor, Etc. | Frequency of Payments (Mo/Qtr) | Amount of Payment | Post-Petition payments not made (Number) | Total Due |
|---|---|---|---|---|
| IRS/Emma Rose Summers Estate* | monthly | $2,859.60 | 0 | 0.00 |
| California Bank & Trust | n/a | $25,000.00 | 0 | 5,000,000.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DUE: | 5,000,000.00 |

* Amount paid to the Internal Revenue Service is to satisfy a judgment on a land lease. The lease covers real property in the City of Lompoc, Parcel "1" of Parcel Map LOM-371P.

## III. TAX LIABILITIES

FOR THE REPORTING PERIOD:

Gross Sales Subject to Sales Tax: **0.00**

Total Wages Paid: **35,808.87**

| | Total Post-Petition Amounts Owing | Amount Delinquent | Date Delinquent Amount Due |
|---|---|---|---|
| Federal Withholding | 0.00 | 0.00 | |
| State Withholding | 0.00 | 0.00 | |
| FICA- Employer's Share | 0.00 | 0.00 | |
| FICA- Employee's Share | 0.00 | 0.00 | |
| Federal Unemployment | 0.00 | 0.00 | |
| Sales and Use | 0.00 | 0.00 | |
| Real Property | 0.00 | 0.00 | |
| Other | 0.00 | 0.00 | |
| TOTAL: | **0.00** | **0.00** | |

IV. AGING OF ACCOUNTS PAYABLE AND RECEIVABLE

| | *Accounts Payable Post-Petition | Accounts Receivable | |
|---|---|---|---|
| | | Pre-Petition | Post-Petition |
| 30 days or less | 0.00 | 0.00 | 314,802.02 |
| 31 - 60 days | 0.00 | 0.00 | 0.00 |
| 61 - 90 days | 0.00 | 0.00 | 0.00 |
| 91 - 120 days | 0.00 | 0.00 | 0.00 |
| Over 120 days | 0.00 | 0.00 | 0.00 |
| TOTAL: | 0.00 | 0.00 | 314,802.02 |

## V. INSURANCE COVERAGE

| Type | Name of Carrier | Amount of Coverage | Policy Expiration Date | Premium Paid Through (Date) |
|---|---|---|---|---|
| General Liability | The Netherlands Insurance Co. | 1,000,000.00 | 12/31/2013 | 12/31/2013 |
| Automobile Liability | Golden Eagle Insurance Co | 1,000,000.00 | 12/31/2013 | 12/31/2013 |
| Umbrella & Excess Liability | Golden Eagle Insurance Co | 5,000,000.00 | 12/31/2013 | 12/31/2013 |
| Worker's Compensation | Peerless Indemnity Insurance Co. | 1,000,000.00 | 12/31/2013 | 12/31/2013 |
| Casualty | None | n/a | n/a | n/a |
| Building & Business Personal Property | The Netherlands Insurance Co. | 1,000,000 | 12/31/2013 | 12/31/2013 |

## VI.  UNITED STATES TRUSTEE QUARTERLY FEES
## (TOTAL PAYMENTS)

| Quarterly Period Ending (Date) | Total Disbursements | Quarterly Fees | Date Paid | Amount Paid | Quarterly Fees Still Owing |
|---|---|---|---|---|---|
| 31-Mar-2013 | 78,623.31 | 975.00 | 18-May-2013 | 975.00 | 0.00 |
| 30-Jun-2013 | 604,444.15 | 4,875.00 | 9-Aug-2013 | 4,875.00 | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | 5,850.00 | | 5,850.00 | 0.00 |

* Post-Petition Accounts Payable SHOULD NOT include professionals' fees and expenses which have been incurred but not yet awarded by the court.  Post-Petition
Accounts Payable SHOULD include professionals' fees and expenses authorized by Court Order but which remain unpaid as of the close of the period report

VII SCHEDULE OF COMPENSATION PAID TO INSIDERS

| Name of Insider | Date of Order Authorizing Compensation | *Authorized Gross Compensation | Gross Compensation Paid During the Month |
|---|---|---|---|
| | | | |
| Randy McDugald | 5/6/2013 | $1,250 on a biweekly basis | 5,000.00 |
| Tory O'Cairns | 5/6/2013 | $1,250 on a biweekly basis | 5,000.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

* Please indicate how compensation was identified in the order (e.g. $1,000/week, $2,500/month)

VIII.  SCHEDULE OF OTHER AMOUNTS PAID TO INSIDERS

| Name of Insider | Date of Order Authorizing Compensation | Description | Amount Paid During the Month |
|---|---|---|---|
| NONE | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

STATEMENT OF PROFIT & LOSS STATEMENT
(ACCRUAL BASIS ONLY)

| | Current Month | Cumulative Post-Petition |
|---|---|---|
| **Sales/Revenue:** | | |
| Gross Sales/Revenue (Room Revenue) | 233,625.61 | 1,067,304.60 |
| Less: Returns/Discounts | - | |
| Net Sales/Revenue | 233,625.61 | 1,067,304.60 |
| | | |
| **Cost of Goods Sold:** | | |
| Beginning Inventory at cost | | |
| Purchases | | |
| Less: Ending Inventory at cost | | |
| Cost of Goods Sold (COGS) | - | - |
| | | |
| **Gross Profit** | 233,625.61 | 1,067,304.60 |
| | | |
| Other Operating Income (Itemize) | | |
| | | |
| **Operating Expenses:** | | |
| Payroll - Insiders | 5,000.00 | 30,000.00 |
| Payroll - Other Employees | 30,808.87 | 151,091.26 |
| Payroll Taxes | 3,544.63 | 20,297.68 |
| Other Taxes-Property Tax | - | 40,000.00 |
| Other Taxes-Room Tax | - | 14,374.95 |
| Other Taxes-State Taxes | - | 800.00 |
| Other Taxes-Sales Taxes | - | 784.00 |
| Legal & Professional | 10,050.00 | 62,570.30 |
| Depreciation and Amortization | - | - |
| Rent Expense - Real Property | 7,194.20 | 45,179.40 |
| Lease Expense - Personal Property | - | |
| Insurance-Workers Compensation | - | 13,917.00 |
| Real Property Taxes | - | |
| Telephone and Utilities | 8,943.05 | 61,099.17 |
| **Travel and Entertainment (Itemize)** | | - |
| Automobile Expense | 123.76 | 2,519.75 |
| Meals & Entertainment | 54.81 | 191.46 |
| **Miscellaneous Operating Expenses (Itemize)** | | - |
| Advertising | 600.00 | 916.00 |
| Bank Service Charges (Merchant card) | 7,474.83 | 29,351.23 |
| Beverage | 3,193.51 | 15,579.60 |
| Bookkeeping | 382.50 | 1,445.00 |
| Cable TV | 430.78 | 14,985.30 |
| Cleaning Supplies | 3,641.44 | 9,220.31 |
| Dues & Subscriptions | 238.46 | 1,386.80 |
| Equipment Rental | 197.41 | 765.40 |
| Food | 14,605.86 | 76,234.37 |
| Guest Amenities | 4,835.16 | 65,402.10 |
| Landscaping | 1,290.00 | 4,642.73 |
| Licenses & Permits | - | 2,343.20 |
| Office Supplies | 807.17 | 7,753.63 |
| Outside Labor | 405.00 | 541.00 |
| Payroll Processing Fees | 1,121.70 | 4,589.68 |
| Penalties | - | 3,274.46 |
| Postage & Delivery | 222.41 | 1,096.51 |
| Pool Repairs | 334.60 | 1,556.73 |
| Promotional | 500.00 | 710.00 |
| Repairs & Maintenance | 3,248.48 | 15,750.27 |
| Sales Commissions | 3,262.85 | 26,453.25 |
| Supplies | 1,682.20 | 39,175.41 |
| U.S. Trustee Fees | - | 5,850.00 |
| Uniforms | - | 427.29 |
| Total Operating Expenses | 114,193.68 | 772,275.24 |
| | | |
| Net Gain/(Loss) from Operations | 119,431.93 | 295,029.36 |
| | | |
| **Non-Operating Income:** | | |
| Interest Income | | |
| Net Gain on Sale of Assets (Itemize) | | |
| Other (Itemize) | | |
| Total Non-Operating income | - | - |
| | | |
| **Non-Operating Expenses:** | | |
| Interest Expense | | |
| Legal and Professional (Itemize) | | |
| Other (Itemize) | | |
| Total Non-Operating Expenses | - | - |
| | | |
| **NET INCOME/(LOSS)** | 119,431.93 | 295,029.36 |

(Attach exhibit listing all itemizations required above)

X. BALANCE SHEET
(ACCRUAL BASIS ONLY)

| ASSETS | Current Month End | |
|---|---|---|
| Current Assets: | | |
| Unrestricted Cash | 110,243.82 | |
| Restricted Cash | | |
| Accounts Receivable (Trade) | 314,802.02 | |
| Credit Card Receivable | - | |
| Inventory | - | |
| Other Receivables-Due from Howard Johnson | 5,570.21 | |
| Other Receivables-Other | 5,042.00 | |
| Prepaid Expenses (Rent) | - | |
| Prepaid Expense-Finance Charges | 10,595.00 | |
| Prepaid Expense-Loan Fees | 15,000.00 | |
| Prepaid Expense-Other Legal Counsel | | |
| Prepaid-Other | - | |
| Total Current Assets | | 461,253.05 |
| | | |
| Property, Plant, and Equipment | 3,305,170.40 | |
| Accumulated Depreciation/Depletion | 1,340,222.00 | |
| Net Property, Plant, and Equipment | | 1,964,948.40 |
| | | |
| Other Assets (Net of Amortization): | | |
| Due from Insiders-O'Cairns Inn | 296,976.10 | |
| Other (Rent Deposits) | - | |
| Total Other Assets | | 296,976.10 |
| | | |
| TOTAL ASSETS | | 2,723,177.55 |
| | | |
| LIABILITIES | | |
| **Post-petition Liabilities:** | | |
| Accounts Payable | - | |
| Taxes Payable-Room Taxes | 209,698.76 | |
| Taxes Payable-Estate | 13,172.65 | |
| Loan Payable-McDugald | 876.99 | |
| Professional fees | - | |
| Secured Debt | - | |
| Other-Bank of America (cc#8549) | 473.85 | |
| Other-Room Deposits | 238.00 | |
| Other-Payroll Taxes | 414.48 | |
| Total Post-petition Liabilities | | 224,874.73 |
| | | |
| **Pre-petition Liabilities:** | | |
| Secured Liabilities-California Bank & Trust | 4,709,228.70 | |
| Priority Liabilities-Room Taxes | - | |
| Priority Liabilities-Estate Taxes | - | |
| Unsecured Liabilities-Proprietor Contributions | 99,258.47 | |
| Other (Itemize) | - | |
| Total Pre-petition Liabilities | | 4,808,487.17 |
| | | |
| TOTAL LIABILITIES | | 5,033,361.90 |
| | | |
| EQUITY: | | |
| 1 Pre-petition Owners' Equity (original amount) | (2,605,213.71) | |
| 2 Direct Charges to Equity (Itemized, see below)***** | - | |
| 3 Post-petition Profit/(Loss) | 295,029.36 | |
| TOTAL EQUITY | | (2,310,184.35) |
| | | |
| TOTAL LIABILITIES & EQUITY | | 2,723,177.55 |

EXHIBIT "1"

Page 16

## XI. QUESTIONNAIRE

|  |  | No |
|---|---|---|
| 1. | Has the debtor-in-possession made any payments on its pre-petition unsecured debt, except as have been authorized by the court? If "Yes", explain below: | X |

|  |  | No |
|---|---|---|
| 2. | Has the debtor-in-possession during this reporting period provided compensation or remuneration to any officers, directors, principals, or other insiders without appropriate authorization? If "Yes", explain below: | X |

3. State what progress was made during the reporting period toward filing a plan of reorganization:

4. Describe potential future developments which may have a significant impact on the case:
   None

5. Attach copies of all Orders granting relief from the automatic stay that were entered duing the reporting period.

   None

|  |  | No |
|---|---|---|
| 6. | Did you receive any exempt income this month, which is not set forth in the operating report? If "Yes", please set forth the amounts and sources of the income below. | X |

I, Randy McDugald, Secretary/Treasurer,
declare under penalty of perjury that I have fully read and understood the foregoing debtor-in-possession
operating report and that the information contained herein is true and complete to the best of my
knowledge.


_____          09/10/13
Randy McDugald                              Date
Secretary/Treasurer

1 of 2



# CHASE

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

August 01, 2013 through August 30, 2013

Account Number:  0000004185 1051

00108616 DRE 703 142 24313 NNNNNNNNNNN T  1 000000000 61 0000

COTO INVESTMENTS INC DBA O'CAIRNS INN
& SUITES DBA BEST WESTERN O'CAIRNS INN
DEBTOR IN POSSESSION
940 E OCEAN AVE
LOMPOC CA 93436-7019

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



We will no longer sell gift cards

Starting September 22, we will no longer sell gift cards. We apologize for any inconvenience.

If you have questions, please call the number on this statement. All terms and conditions of your account remain the same.

Deposit Account Agreement Update

We will update Section H in our Deposit Account Agreement titled Closing Your Account.

Effective July 21, 2013. If you have pending transactions on your account, or are overdrawn, we may not immediately close the account. However, if you ask us, we will restrict additional withdrawals from your account, other than the pending transactions. We will not pay any interest on the account after we have restricted your account

This change will be reflected in your account agreement; all other terms remain the same. If you have questions, please call us at the telephone number listed on this account statement or visit the nearest Chase branch.

## CHANGE IN WIRE TRANSFER CUTOFF TIME FOR CALIFORNIA BRANCHES

Starting September 23, the cutoff time for initiating domestic and international wire transfers in California branches is now 2 p.m. PT.

If you have questions, please call us at the number on this statement or visit your nearest branch.

## CHECKING SUMMARY     Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$169,487.26** |
| Deposits and Additions | 57 | 192,997.41 |
| Checks Paid | 58 | - 85,946.88 |
| Electronic Withdrawals | 23 | - 95,811.12 |
| **Ending Balance** | **138** | **$180,726.67** |

Page 1 of 8

# CHASE ⬤

August 01, 2013 through August 30, 2013

Account Number: ████████████1051

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|---|--------|
| 08/01 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | $4,580.51 |
| 08/01 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 844.05 |
| 08/02 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 3,338.17 |
| 08/02 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 208.27 |
| 08/05 | Deposit | | 36,266.40 |
| 08/05 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 13,108.11 |
| 08/05 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 5,004.12 |
| 08/05 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 4,359.01 |
| 08/05 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 814.30 |
| 08/05 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 227.37 |
| 08/06 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 3,431.12 |
| 08/06 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 731.80 |
| 08/07 | Deposit | | 706.50 |
| 08/07 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 4,903.15 |
| | American Express Settlement 5044084770 | CCD ID: 1134992250 | 1,184.80 |
| 08/08 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 927.87 |
| 08/08 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | |
| 08/09 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 5,830.55 |
| 08/09 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 232.57 |
| 08/12 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 4,588.02 |
| 08/12 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 4,259.07 |
| 08/12 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 3,629.26 |
| 08/12 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 640.62 |
| 08/13 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 6,914.60 |
| 08/13 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 331.51 |
| 08/14 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 1,340.73 |
| 08/14 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 492.05 |
| 08/15 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 3,769.48 |
| 08/15 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 1,027.05 |
| 08/16 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 2,572.01 |
| 08/19 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 9,587.62 |
| 08/19 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 8,609.59 |
| 08/19 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 1,671.97 |
| 08/19 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 1,524.71 |
| 08/19 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 1,314.13 |
| 08/22 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 879.35 |
| 08/23 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 1,421.14 |
| 08/26 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 5,213.34 |
| 08/26 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 4,169.29 |
| 08/26 | Bank of America  Deposit    345234635885 | CCD ID: 941687665B | 2,829.42 |
| 08/26 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 1,769.84 |

EXHIBIT "1"

# CHASE ⬡

August 01, 2013 through August 30, 2013

Account Number: █████████1051

## DEPOSITS AND ADDITIONS  *(continued)*

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|---|-------:|
| 08/26 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 1,031.70 |
| 08/27 | Bank of America Deposit 345234635885 | CCD ID: 941687665B | 4,484.03 |
| 08/27 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 661.31 |
| 08/28 | Bank of America Deposit 345234635885 | CCD ID: 941687665B | 5,289.00 |
| 08/28 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 1,885.49 |
| 08/29 | Bank of America Deposit 345234635885 | CCD ID: 941687665B | 1,507.76 |
| 08/29 | American Express Settlement 5044084770 | CCD ID: 1134992250 | 123.24 |
| 08/30 | Deposit | | 385.50 |
| 08/30 | Bank of America Deposit 345234635885 | CCD ID: 941687665B | 4,017.04 |
| | American Express Settlement 5044084770 | CCD ID: 1134992250 | 234.80 |

**Total Deposits and Additions** $192,99741

## CHECKS PAID

| CHECK NO. | DESCRIPTION | | DATE PAID | AMOUNT |
|-----------|-------------|---|-----------|-------:|
| 1017  ^ | | | 08/09 | $25,000.00 |
| 1018  ^ | | | 08/08 | 10,000.00 |
| 1020 * ^ | | | 08/19 | 3,828.54 |
| * | | 1022 | 08/26 | 107.53 |
| 1023  ^ | | | 08/29 | 3,000.00 |
| 2161 * ^ | | | 08/01 | 314.60 |
| 2163 * ^ | | | 08/01 | 48.40 |
| 2165 * ^ | | | 08/01 | 72.60 |
| 2175 * ^ | | | 08/09 | 7,745.70 |
| 2190 * ^ | | | 08/01 | 72.60 |
| 2191  ^ | | | 08/02 | 12.10 |
| 2192  ^ | | | 08/07 | 300.00 |
| 2218 * ^ | | | 08/06 | 279.05 |
| 2219  ^ | | | 08/05 | 197.41 |
| 2220  ^ | | | 08/08 | 59.24 |
| 2222 * ^ | | | 08/05 | 223.00 |
| 2223  ^ | | | 08/06 | 8 198.72 |
| 2224  ^ | | | 08/05 | 195.00 |
| 2225  ^ | | | 08/02 | 53.40 |
| 2226  ^ | | | 08/05 | 653.00 |
| 2229 * ^ | | | | 1,755.00 |
| 2230  ^ | | | 08/05 | 103.64 |
| 2231  ^ | | | 08/05 | 293.56 |
| 2232  ^ | | | 08/05 | 566.76 |
| 2234 * ^ | | | 08/14 | 12,553.89 |
| 2235  ^ | | | 08/05 | 109.84 |
| 2238 * ^ | | | 08/13 | 1,475.00 |
| 2239  ^ | | | 08/14 | 1,212.90 |
| 2262 * ^ | | | 08/13 | 430.78 |
| 2263  ^ | | | 08/12 | 1,303.65 |
| 2264  ^ | | | 08/14 | 325.00 |

# CHASE ⬡

August 01, 2013 through August 30, 2013

Account Number: ████████████051

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 2265 ^ | | 08/13 | |
| 2266 ^ | | 08/14 | 34.30 |
| 2267 ^ | | 08/14 | 222.41 |
| 2268 ^ | | 08/13 | 268.30 |
| 2269 ^ | | 08/16 | 1,290.00 |
| 2270 ^ | | 08/13 | 430.00 |
| 2271 | | 08/13 | 279.00 |
| 2272 ^ | | 08/27 | 290.71 |
| 2273 ^ | | 08/13 | 113.75 |
| 2274 ^ | | 08/13 | 153.41 |
| 2275 ^ | | 08/13 | 95.00 |
| 2276 ^ | | 08/13 | 170.00 |
| 2277 ^ | | 08/12 | 334.60 |
| 2278 ^ | | 08/12 | 75.51 |
| 2279 ^ | | 08/13 | 377.87 |
| 2280 ^ | | 08/14 | 1,033.90 |
| 2281 ^ | | 08/09 | 117.04 |
| 2282 ^ | | 08/26 | 1,294.43 |
| 2284 * ^ | | 08/14 | 600.00 |
| 2285 ^ | | 08/20 | 4,550.00 |
| 2286 ^ | | 08/12 | |
| 2291 * ^ | | 08/30 | 382.50 |
| 2292 * ^ | | 08/29 | 158.20 |
| 2293 ^ | | 08/28 | 225.00 |
| 2294 ^ | | 08/28 | 18.14 |
| 2295 ^ | | 08/26 | 391.71 |
| 2296 ^ | | 08/28 | 307.44 |

**Total Checks Paid**                                                           **$85,946.88**

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

\* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | | AMOUNT |
|---|---|---|
| 08/01 | 08/01 Online Transfer To Chk ..1069 Transaction#: 3404268658 | $15.00 |
| 08/01 | 08/01 Online Transfer To Chk ...1077 Transaction#: 3404270435 | 15.00 |
| 08/01 | Innlink, LLC  Payment  018Oca      CCD ID: 1562292301 | 2,233.50 |
| 08/05 | Bank of America  Interchng 345234635885   CCD ID: 941687665B | 4,705.43 |
| 08/05 | Bank of America  Discount  345234635885   CCD ID: 941687665B | 2,600.26 |
| 08/05 | Home Depot     Online Pmt 561133367671713 Web ID: Citiccsweb | 1,500.00 |
| | Bank of America  Online Pmt Ckf910409492POS CCD ID: 950000008705 | 126.81 |
| 08/05 | Bank of America Fee     345234635885    CCD ID: 941687665B | 9914 |
| 08/06 | 08/06 Online Transfer To Chk ...1069 Transaction#: 3414114302 | 3,828.82 |
| 08/07 | Golden Eagle   300999120  2627569     CCD ID: 0000061050 | 4,738.75 |



**CHASE** ⬡

August 01, 2013 through August 30, 2013

Account Number: ███████████1051



## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---:|
| 08/08 | 08/08 Online Transfer To Chk ...1077 Transaction#: 3417537626 | 15,787.51 |
| 08/13 | Bank of America  Online Pmt Ckf910409492POS CCD ID: 9500000000 | 419.57 |
| 08/14 | 08/14 Online Transfer To Chk ...1077 Transaction#: 3426814255 | 405.00 |
| 08/19 | 08/19 Online Transfer To Chk ...1077 Transaction#: 3436013890 | 15,255.26 |
| 08/19 | 08/19 Online Transfer To Chk ...1069 Transaction#: 3436016732 | 3,718.83 |
| 08/19 | Sws of America  Corp Pmt  620000000072272 CCD ID: 2591285786 | 2,166.25 |
| 08/20 | Booking.Com B.V. ACH/Deb          CCD ID: 9004883285 | 1,842.60 |
| 08/21 | Sysco Corporatio Epospymnts 3851637          ID: 1743065202 | 13,293.24 |
| 08/23 | 08/23 Online Transfer To Chk ...1077 Transaction#: 3443072781 | 694.16 |
|  | 08/26 Online Transfer To Chk ...1077 Transaction#: 3447309775   08/26 | 264.92 |
| 08/27 | 08/27 Online Transfer To Chk ...1077 Transaction#: 3448900038 | 380.02 |
| 08/27 | 08/27 Online Transfer To Chk ...1069 Transaction#: 3448901393 | 21,385.26 |
| 08/30 | Bank of America  Online Pmt Ckf910409492POS CCD ID: 9500000000 | 335.79 |

**$95,811.12**

| DATE | AMOUNT | DATE | AMOUNT |
|---|---:|---|---:|
| 08/01 | $172,140.12 | 08/16 | 178,606.91 |
| 08/02 | 175,621.06 | 08/19 | 176,346.05 |
| 08/05 | 224,026.52 | 08/20 | 178,864.21 |
| 08/06 | 222,127.85 | 08/21 | 171,920.40 |
| 08/07 | 223,883.55 | 08/22 | 174,939.58 |
| 08/08 | 199,688.72 | 08/23 | 175,666.56 |
| 08/09 | 172,889.10 | 08/26 | 188,621.56 |
| 08/12 | 184,121.71 | 08/27 | 171,710.91 |
| 08/13 | 187,082.99 | 08/28 | 178,334.82 |
| 08/14 | 172,528.37 | 08/29 | 176,807.62 |
| 08/15 | 177,324.90 | 08/30 | 180,726.67 |

## SERVICE CHARGE SUMMARY

You were not charged a monthly service fee this month.  Your monthly service fee can continue to be waived in five
different ways during any statement period:
- Maintain an average daily balance of $7,500.00.  Your average daily balance was $182,318.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period Your relationship balance
  was $181,943.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. Your Premier
  Plus personal checking account is linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00.  OR
- Pay at least $50.00 in qualifying checking-related services or fees.  You paid $0.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

# CHASE ⬡

| **SERVICE CHARGE SUMMARY** | *(continued)* |
|---|---|

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 70 |
| Deposits / Credits | 57 |
| Deposited Items | 5 |
| **Transaction Total** | **132** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $15.00 |
| Service Fee Credit | -$15.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

| CASH PROCESSING | AMOUNT |
|---|---|
| Cash Deposits Immediate Verification | $803.00 |
| Cash Deposits Post Verification/Night Drop | |
| **Cash Deposits Total** | |
| Cash Deposits Allowed | |
| **Excess Cash Deposits** | |



# CHASE ◘

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

August 01, 2013 through August 30, 2013

Account Number: ▮▮▮▮▮▮▮▮▮1069



## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00108617 DRE 703 142 24313 NNNNNNNNNN T 1 000000000 61 0000
COTO INVESTMENTS INC DBA O'CAIRNS INN
& SUITES DBA BEST WESTERN O'CAIRNS INN
DEBTOR IN POSSESSION
940 E OCEAN AVE
LOMPOC CA 93436-7019

We will no longer sell gift cards

Starting September 22, we will no longer sell gift cards. We apologize for any
inconvenience.

If you have questions, please call the number on this statement. All terms and conditions
of your account remain the same.

Deposit Account Agreement Update

We will update Section H in our Deposit Account Agreement titled Closing Your Account.

Effective July 21, 2013. If you have pending transactions on your account,
or are overdrawn, we may not immediately close the account. However, if you ask us,
we will restrict additional withdrawals from your account, other than the pending
transactions. We will not pay any interest on the account after we have restricted
your account.

This change will be reflected in your account agreement; all other terms remain the same.
If you have questions, please call us at the telephone number listed on this account
statement or visit the nearest Chase branch.

## CHANGE IN WIRE TRANSFER CUTOFF TIME FOR CALIFORNIA BRANCHES

Starting September 23, the cutoff time for initiating domestic and international wire transfers in California branches is
now 2 p.m. PT.

If you have questions, please call us at the number on this statement or visit your nearest branch.

## CHECKING SUMMARY | Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **-$15.00** |
| Deposits and Additions | 4 | 28,947.91 |
| Checks Paid | 1 | - 21,385.26 |
| Electronic Withdrawals | 6 | - 7,547.65 |
| Fees and Other Withdrawals | 1 | - 15.00 |
| **Ending Balance** | **12** | **-$15.00** |



August 01, 2013 through August 30, 2013

Account Number: ███████41898█069

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/01 | Online Transfer From Chk ...1051 Transaction#: 3404268658 | $15.00 |
| 08/06 | Online Transfer From Chk ...1051 Transaction#: 3414114302 | 3,828.82 |
| 08/19 | Online Transfer From Chk ...1051 Transaction#: 3436016732 | 3,718.83 |
| 08/27 | Online Transfer From Chk ...1051 Transaction#: 3448901393 | 21,385.26 |
| **Total Deposits and Additions** | | **$28,947.91** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| 2006 ^ | | 08/30 | $21,385.26 |
| **Total Checks Paid** | | | **$21,385.26** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/06 | Employment Devel Edd Eftpmt 879744512        CCD ID: 2282533055 | $234.71 |
| 08/14 | Irs        Usataxpymt 225362620123699 CCD ID: 3387702000 | 3,358.38 |
| 08/14 | Employment Devel Edd Eftpmt 2063672832        CCD ID: 2282533055 | 235.73 |
| 08/28 | Employment Devel Edd Eftpmt 262363648        CCD ID: 2282533055 | 228.07 |
| 08/28 | Employment Devel Edd Eftpmt 1562813952        CCD ID: 2282533055 | 221.14 |
| 08/29 | Irs        Usataxpymt 225364120459972 CCD ID: 3387702000 | 3,269.62 |
| **Total Electronic Withdrawals** | | **$7,547.65** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/30 | Service Fee | $15.00 |
| **Total Fees & Other Withdrawals** | | **$15.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 08/01 | $0.00 |
| 08/06 | 3,594.11 |
| 08/14 | 0.00 |
| 08/19 | 3,718.83 |
| 08/27 | 25,104.09 |
| 08/28 | 24,654.88 |
| 08/29 | 21,385.26 |
| 08/30 | -15.00 |

Page 2 of 4



CHASE

August 01, 2013 through August 30, 2013

Account Number: 0000004189 4069

## SERVICE CHARGE SUMMARY

You were charged a monthly service fee this month.  Your Chase BusinessSelect Checking monthly Service Fee can be waived in five different ways during any statement period:

·      Maintain an average daily balance of $7,500.00.  Your average daily balance was  $4,321.00. OR
·      Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $4,320.00. OR
·      Link a qualifying personal checking account to your Chase BusinessSelect Checking account. You have no qualifying personal account linked. OR
·      Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00. OR
·      Pay at least $50.00 in qualifying checking-related services or fees.  You paid $0.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.



| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 7 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **7** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $15.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$15.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$15.00** |

 CHASE ⬡

August 01, 2013 through August 30, 2013
Account Number:  00000041891069

## BALANCING YOUR CHECKBOOK

**Note: Ensure your checkbook register** is up to date with all transactions to date whether they are included on your statement or not.

**1. Write in the Ending Balance shown on this statement:**          Step 1 Balance:  $_____

**2. List and total all deposits & additions  not shown on this statement:**

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
|      |        |      |        |      |        |
|      |        |      |        |      |        |

Step 2 Total:    $_____

**3. Add Step 2 Total to Step 1 Balance.**          Step 3 Total:    $_____

**4. List and total all checks, ATM withdrawals, debit card purchases and other withdrawals not shown on this statement.**

| Check Number or Date | Amount | Check Number or Date | Amount |
|----------------------|--------|----------------------|--------|
|                      |        |                      |        |
|                      |        |                      |        |
|                      |        |                      |        |
|                      |        |                      |        |
|                      |        |                      |        |
|                      |        |                      |        |

Step 4 Total:    -$_____

**5. Subtract Step 4 Total from Step 3 Total.  This should match your Checkbook Balance:**    $_____

IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
  • Your name and account number
  • The dollar amount of the suspected error
  • A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation .

IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.



**JPMorgan Chase Bank, N.A. Member FDIC**



# CHASE ◉

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

August 01, 2013 through August 30, 2013

Account Number:      00000418941077

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

IIIIııIIıIıIıIıIIıIııIIIııııIIIıIııIIıIIııIIII
00108618 DRE 703 142 24313 NNNNNNNNNNN T  1 000000000 61 0000
COTO INVESTMENTS INC DBA O'CAIRNS INN
& SUITES DBA BEST WESTERN O'CAIRNS INN
DEBTOR IN POSSESSION
940 E OCEAN AVE
LOMPOC CA 93436-7019



We will no longer sell gift cards

Starting September 22, we will no longer sell gift cards. We apologize for any inconvenience.

If you have questions, please call the number on this statement. All terms and conditions of your account remain the same.

Deposit Account Agreement Update

We will update Section H in our Deposit Account Agreement titled Closing Your Account.

Effective July 21, 2013. If you have pending transactions on your account, or are overdrawn, we may not immediately close the account. However, if you ask us, we will restrict additional withdrawals from your account, other than the pending transactions. We will not pay any interest on the account after we have restricted your account.

This change will be reflected in your account agreement; all other terms remain the same. If you have questions, please call us at the telephone number listed on this account statement or visit the nearest Chase branch.

## CHANGE IN WIRE TRANSFER CUTOFF TIME FOR CALIFORNIA BRANCHES

Starting September 23, the cutoff time for initiating domestic and international wire transfers in California branches is now 2 p.m. PT.

If you have questions, please call us at the number on this statement or visit your nearest branch.

## CHECKING SUMMARY | Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$1,777.16** |
| Deposits and Additions | 7 | 32,801.87 |
| Checks Paid | 55 | - 33,334.73 |
| Fees and Other Withdrawals | 1 | - 15.00 |
| **Ending Balance** | **63** | **$1,229.30** |



**CHASE** ◆

August 01, 2013 through August 30, 2013
Account Number: ████████████1077

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/01 | Online Transfer From Chk ...1051 Transaction#: 3404270435 | $15.00 |
| 08/08 | Online Transfer From Chk ...1051 Transaction#: 3417537626 | 15,787.51 |
| 08/14 | Online Transfer From Chk ...1051 Transaction#: 3426814255 | 405.00 |
| 08/19 | Online Transfer From Chk ...1051 Transaction#: 3436013890 | 15,255.26 |
| 08/23 | Online Transfer From Chk ...1051 Transaction#: 3443072781 | 694.16 |
| 08/26 | Online Transfer From Chk ...1051 Transaction#: 3447309775 | 264.92 |
| 08/27 | Online Transfer From Chk ...1051 Transaction#: 3448900038 | 380.02 |
| **Total Deposits and Additions** | | **$32,801.87** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| 1001 ^ | | 08/21 | $206.46 |
| 1002 ^ | | 08/20 | 405.00 |
| 1003 ^ | | 08/23 | 657.72 |
| 1004 ^ | | 08/27 | 694.16 |
| 1006 * ^ | 08/30 | 08/30 | 380.02 |
| 2171 * ^ | | 08/12 | 694.16 |
| 2173 * ^ | | 08/05 | 316.06 |
| 2174 ^ | | 08/06 | 596.68 |
| 2184 * ^ | | 08/02 | 92.30 |
| 2185 ^ | | 08/01 | 92.96 |
| 2187 * ^ | | 08/12 | 704.64 |
| 2190 * ^ | | 08/13 | 598.91 |
| 2191 ^ | | 08/13 | 609.09 |
| 2193 * ^ | | 08/13 | 374.54 |
| 2194 ^ | | 08/13 | 656.00 |
| 2195 ^ | | 08/13 | 708.10 |
| 2196 ^ | | 08/09 | 648.67 |
| 2197 ^ | | 08/20 | 744.50 |
| 2199 * ^ | | 08/21 | 408.03 |
| 2201 * ^ | | 08/09 | 1,352.05 |
| 2202 ^ | | 08/26 | 694.16 |
| 2203 ^ | | 08/12 | 626.34 |
| 2204 ^ | | 08/12 | 1,092.39 |
| 2205 ^ | | 08/09 | 1,141.88 |
| 2206 ^ | | 08/12 | 591.18 |
| 2207 ^ | | 08/13 | 92.30 |
| 2208 ^ | | 08/12 | 92.96 |
| 2209 ^ | | 08/12 | 762.75 |
| 2210 ^ | | 08/12 | 820.02 |
| 2211 ^ | | 08/12 | 771.58 |
| 2212 ^ | | 08/09 | 909.32 |
| 2213 ^ | | 08/09 | 792.71 |
| 2214 ^ | | 08/12 | 388.93 |
| 2215 ^ | | 08/26 | 365.40 |



August 01, 2013 through August 30, 2013
Account Number: 000000416981077

## CHECKS PAID  *(continued)*

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 2216  ^ | | 08/26 | 696.54 |
| 2217  ^ | | 08/26 | 624.11 |
| 2218  ^ | | 08/26 | 638.99 |
| 2219  ^ | | 08/26 | 743.12 |
| 2220  ^ | | 08/26 | 1,352.04 |
| 2221  ^ | | 08/27 | 525.67 |
| 2222  ^ | | 08/27 | 579.12 |
| 2223  ^ | | 08/27 | 729.78 |
| 2224  ^ | | 08/29 | 694.16 |
| 2225  ^ | | 08/26 | 626.34 |
| 2227  * ^ | | 08/23 | 217.31 |
| 2230  * ^ | | 08/26 | 633.33 |
| 2231  ^ | | 08/27 | 936.34 |
| 2232  ^ | | 08/26 | 1,092.38 |
| 2233  ^ | | 08/26 | 1,141.87 |
| 2234  ^ | 08/23 | 08/23 | 852.46 |
| 2235  ^ | | 08/26 | 591.18 |
| 2236  ^ | | 08/26 | 303.24 |
| 2238  * ^ | | 08/27 | 92.30 |
| 2239  ^ | | 08/27 | 92.96 |
| 102237  * ^ | | 08/26 | 89.52 |
| **Total Checks Paid** | | | **$33,334.73** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/30 | Service Fee | $15.00 |
| **Total Fees & Other Withdrawals** | | **$15.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 08/01 | $1,699.20 | 08/14 | 2,458.15 |
| 08/02 | 1,606.90 | 08/19 | 17,713.41 |
| 08/05 | 1,290.84 | 08/20 | 16,563.91 |
| 08/06 | 694.16 | 08/21 | 15,949.42 |
| 08/08 | 16,481.67 | 08/23 | 14,916.09 |
| 08/09 | 11,637.04 | 08/26 | 5,588.79 |
| 08/12 | 5,092.09 | 08/27 | 2,318.48 |
| 08/13 | 2,053.15 | 08/29 | 1,624.32 |

Page 3 of 6

# CHASE ⬡

August 01, 2013 through August 30, 2013

Account Number:    ██████████1077

## DAILY ENDING BALANCE *(continued)*

| DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|
| 08/30 | 1,229.30 | | |

## SERVICE CHARGE SUMMARY

You were charged a monthly service fee this month.  Your Chase BusinessSelect Checking monthly Service Fee can be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00.  Your average daily balance was  $6,801.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $6,818.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. You have no qualifying personal account linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00. OR
- Pay at least $50.00 in qualifying checking-related services or fees.  You paid $0.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 55 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **55** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $15.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$15.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$15.00** |

# EXHIBIT 2

# EXHIBIT 2

8:43 AM
09/29/13
Accrual Basis

## Coto Investments dba O'Cain's Inn and Suites
## Profit & Loss
### September 2012 through August 2013

| | Sep 12 | Oct 12 | Nov 12 | Dec 12 | Jan 13 | Feb 13 | Mar 13 | Apr 13 | May 13 | Jun 13 | Jul 13 | Aug 13 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | |
| Banquet Room | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 283.20 | 1,533.36 | 0.00 | 1,816.56 |
| Bar Sales | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 190.00 | 85.00 | 229.00 | 216.00 | 97.00 | 822.00 |
| Breakfast | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | 310.00 | 30.00 | 20.00 | 20.00 | 410.00 |
| Misc. Income | 360.05 | 895.00 | 250.20 | 983.49 | 228.52 | 2,556.10 | 2,042.57 | 450.13 | 282.00 | 307.20 | 42.70 | 180.00 | 8,577.96 |
| Pet Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 350.00 | 275.00 | 150.00 | 650.00 | 225.00 | 1,650.00 |
| Phone/Fax | 0.00 | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 |
| Pizza | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 19.00 | 0.00 | 27.00 |
| Rollaway | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 145.00 | 54.00 | 30.00 | 153.00 | 15.00 | 397.00 |
| Room Revenue | 98,678.55 | 102,614.58 | 105,570.40 | 119,169.80 | 180,783.30 | 150,176.40 | 154,039.00 | 168,116.35 | 182,233.43 | 223,027.78 | 221,657.40 | 232,780.11 | 1,949,630.07 |
| Vending | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 557.25 | 541.37 | 323.50 | 1,970.62 |
| **Total Income** | 99,038.60 | 103,524.58 | 106,120.60 | 120,303.29 | 181,021.82 | 153,274.50 | 156,072.57 | 168,840.08 | 183,239.43 | 224,599.40 | 224,834.63 | 233,625.61 | 1,965,286.21 |
| **Expense** | | | | | | | | | | | | | |
| Advertising | 590.66 | 125.67 | 346.67 | -283.33 | 123.67 | 79.00 | 216.08 | 79.00 | 79.00 | 79.00 | 79.00 | 600.00 | 2,118.44 |
| **Automobile Expense** | | | | | | | | | | | | | |
|   Millage Reimbursement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22.96 | 79.00 | 63.27 | 117.04 | 282.27 |
|   Automobile Expense - Other | 865.84 | 447.68 | 0.00 | 917.74 | 447.68 | 447.68 | 447.68 | 1,982.29 | 247.95 | 0.00 | 0.00 | 6.72 | 5,811.26 |
|   Total Automobile Expense | 865.84 | 447.68 | 0.00 | 917.74 | 447.68 | 447.68 | 447.68 | 1,982.29 | 270.91 | 79.00 | 63.27 | 123.76 | 6,093.53 |
| Bank Service Charges | 3,268.84 | 2,686.37 | 2,648.34 | 2,300.24 | 2,179.41 | 4,398.12 | 5,898.91 | 4,669.73 | 4,627.52 | 5,552.44 | 7,134.47 | 7,434.83 | 52,886.22 |
| Bar Supplies | 28.00 | 310.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 338.00 |
| Beverage | 860.80 | 1,365.50 | 630.40 | 1,881.95 | 3,459.90 | 1,655.00 | 1,939.35 | 1,082.80 | 5,104.72 | 3,117.64 | 1,875.73 | 3,193.51 | 26,199.30 |
| Bookkeeping | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 680.00 | 0.00 | 0.00 | 382.50 | 382.50 | 1,445.00 |
| Cable | 3,267.17 | 982.67 | 3,301.95 | 770.48 | 428.82 | 2,983.83 | 2,893.41 | 3,144.36 | 1,180.22 | 4,851.16 | 3,008.97 | 430.78 | 27,243.82 |
| Cleaning Supplies | 780.05 | 0.00 | 639.52 | 0.00 | 1,041.02 | 0.00 | 1,843.84 | 838.31 | 820.87 | 788.12 | 1,217.73 | 3,841.44 | 11,650.90 |
| Commission | 1,793.60 | 1,511.20 | 1,118.60 | 592.15 | 3,024.47 | 663.00 | 1,528.10 | 3,333.45 | 6,503.10 | 6,005.15 | 4,588.00 | 3,262.65 | 35,263.67 |
| Dues and Subscriptions | 5,192.01 | 188.35 | 3,686.08 | 188.35 | 2,308.86 | 3,206.94 | 2,573.92 | 198.72 | 244.40 | 188.78 | 198.72 | 238.46 | 18,415.49 |
| Equipment Rental | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 173.17 | 173.17 | 197.41 | 197.41 | 765.40 |
| Fees | 0.00 | 0.00 | 0.00 | -51,355.17 | 0.00 | 0.00 | 175.00 | 0.00 | 0.00 | 150.00 | 300.00 | 0.00 | -50,730.17 |
| Food | 13,101.81 | 10,818.78 | 14,080.42 | 12,693.27 | 9,516.92 | 14,112.79 | 7,592.77 | 23,379.13 | 11,993.56 | 8,604.07 | 12,331.13 | 14,605.86 | 153,600.51 |
| Guest Amenities | 981.54 | 342.57 | 2,131.45 | 0.00 | 1,473.53 | 2,171.77 | 8,957.84 | 19,670.28 | 12,860.19 | 13,885.63 | 14,020.84 | 4,635.15 | 62,930.94 |
| **Insurance** | | | | | | | | | | | | | |
|   Work Comp | 2,255.31 | 9,207.81 | 10,774.37 | 10,683.50 | -6,427.81 | 0.00 | 688.25 | 0.00 | 4,439.50 | 4,738.75 | 4,738.75 | 0.00 | 41,099.43 |
|   Total Insurance | 2,255.31 | 9,207.81 | 10,774.37 | 10,683.50 | -6,427.81 | 0.00 | 688.25 | 0.00 | 4,439.50 | 4,738.75 | 4,738.75 | 0.00 | 41,099.43 |
| **Interest Expense** | | | | | | | | | | | | | |
|   Loan Interest | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   Mortgage | 0.00 | 0.00 | 0.00 | -118,941.20 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -118,941.20 |
|   Total Interest Expense | 0.00 | 0.00 | 0.00 | -118,941.20 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -118,941.20 |
| Landscaping | 1,450.00 | 1,320.00 | 800.00 | 1,176.00 | 800.00 | 800.00 | 1,160.00 | 844.61 | 1,600.00 | 800.00 | 108.12 | 1,290.00 | 12,178.73 |
| Licenses and Permits | 0.00 | 0.00 | 1,308.00 | 0.00 | 0.00 | 0.00 | 0.00 | 774.99 | 876.00 | 0.00 | 483.51 | 0.00 | 3,442.50 |
| Miscellaneous | 525.51 | 0.00 | 166.00 | -512.51 | 10,868.30 | 5,634.91 | 0.00 | 0.00 | 0.00 | 0.52 | 975.25 | -558.28 | 16,154.45 |
| Office Supplies | 2,231.58 | 902.11 | 3,724.76 | 0.00 | 3,377.48 | 2,500.00 | 5,364.00 | 835.49 | 4,954.90 | 0.00 | 875.25 | 40.00 | 27,360.14 |
| Outside Labor | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 136.00 | 405.00 | 541.00 |

8:43 AM
09/29/13
Accrual Basis

## Coto Investments dba O'Cairn's Inn and Suites
### Profit & Loss
#### September 2012 through August 2013

| | Sep 12 | Oct 12 | Nov 12 | Dec 12 | Jan 13 | Feb 13 | Mar 13 | Apr 13 | May 13 | Jun 13 | Jul 13 | Aug 13 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll Expenses | 1,361.26 | 598.70 | 1,887.22 | 1,201.00 | 1,238.86 | 1,586.26 | 773.45 | 467.65 | 1,287.02 | 1,345.98 | 367.33 | 1,121.70 | 13,327.33 |
| Penalty | 0.00 | 0.00 | 1,282.02 | -5,172.24 | 0.00 | 2,068.48 | 0.00 | 0.00 | 1,519.46 | 1,755.00 | 1,755.00 | 0.00 | 1,452.72 |
| Permit | 0.00 | 0.00 | 88.70 | 0.00 | 0.00 | 0.00 | 0.00 | 88.70 | 120.00 | 0.00 | 0.00 | 0.00 | 297.40 |
| Pool Repairs | 0.00 | 0.00 | 0.00 | 666.50 | 229.50 | 0.00 | 0.00 | 0.00 | 663.59 | 0.00 | 558.54 | 334.60 | 2,452.73 |
| Postage and Delivery | 127.67 | 170.40 | 248.41 | 0.00 | 153.17 | 117.03 | 179.47 | 276.60 | 381.75 | 0.00 | 215.75 | 222.41 | 2,592.66 |
| Professional Fees | | | | | | | | | | | | | |
| Accounting | 250.00 | 250.00 | 275.00 | 250.00 | 585.00 | 250.00 | 250.00 | 250.00 | 3,920.00 | 2,257.50 | -4,257.50 | 300.00 | 4,685.00 |
| Legal Fees | 0.00 | 0.00 | 3,500.04 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 20,600.30 | 10,000.00 | 10,000.00 | 10,075.00 | 64,175.34 |
| U. S. Trustee Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 975.00 | 4,875.00 | 0.00 | 0.00 | 5,650.00 |
| Professional Fees - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -325.00 | -325.00 |
| Total Professional Fees | 250.00 | 250.00 | 3,775.04 | 250.00 | 585.00 | 250.00 | 250.00 | 10,000.00 | 25,495.30 | 17,132.50 | 5,742.50 | 10,050.00 | 74,385.34 |
| Promotional | 6,714.39 | 4,018.80 | 7,179.28 | 5,387.26 | 3,079.47 | 5,000.00 | 0.00 | 0.00 | 0.00 | 210.00 | 0.00 | 500.00 | 32,089.20 |
| Reconciliation Discrepancies | 0.15 | 116.00 | -9.01 | 0.00 | 0.00 | -0.96 | 0.00 | 0.00 | 0.00 | 0.52 | 0.00 | 0.00 | 106.70 |
| Rent | 4,514.60 | 4,334.60 | 1,475.00 | 4,334.60 | 4,334.60 | 4,334.60 | 1,475.00 | 4,334.60 | 1,475.00 | 7,194.20 | 22,121.80 | 7,194.20 | 67,122.80 |
| Repairs | | | | | | | | | | | | | |
| Building Repairs | 1,767.50 | 236.34 | 496.94 | 0.00 | 0.00 | 0.00 | 509.28 | 783.80 | 1,844.32 | 112.68 | 0.00 | 268.30 | 6,019.16 |
| Equipment Repairs | 365.10 | 512.61 | 85.00 | 258.60 | 1,131.49 | 0.00 | 496.52 | 0.00 | 0.00 | 0.00 | 103.84 | 448.91 | 3,401.67 |
| Repairs - Other | 171.72 | 311.40 | 489.43 | 231.90 | 181.90 | 327.20 | 254.45 | 187.83 | 4,423.62 | 1,763.72 | 3,007.18 | 2,531.27 | 13,971.62 |
| Total Repairs | 2,304.32 | 1,060.35 | 1,071.37 | 490.50 | 1,313.39 | 327.20 | 1,260.25 | 971.63 | 6,267.94 | 1,876.40 | 3,200.82 | 3,248.48 | 23,392.65 |
| Room Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Supplies | 3,526.40 | 6,710.46 | 6,699.47 | 6,676.85 | 5,403.03 | 3,627.02 | 7,215.73 | 15,804.04 | 12,535.27 | 5,053.90 | 1,427.46 | 1,682.20 | 74,361.83 |
| Taxes | | | | | | | | | | | | | |
| Payroll Taxes | 2,765.41 | 2,653.05 | 4,020.10 | 3,921.99 | 4,693.90 | 5,860.38 | 4,008.40 | 3,851.94 | 4,918.42 | 3,371.60 | 2,994.80 | 3,373.15 | 46,444.14 |
| Property Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 34,487.32 | 39,825.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 74,312.32 |
| Sales Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 784.00 | 0.00 | 784.00 |
| State Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 800.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 800.00 |
| Total Taxes | 2,765.41 | 2,653.05 | 4,020.10 | 3,921.99 | 4,693.90 | 40,347.70 | 44,633.40 | 3,851.94 | 4,918.42 | 3,371.60 | 3,778.80 | 3,373.15 | 122,340.46 |
| Travel & Ent | | | | | | | | | | | | | |
| Meals | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 37.45 | 50.00 | 25.00 | 51.20 | 60.45 | 0.00 | 54.81 | 278.91 |
| Total Travel & Ent | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 37.45 | 50.00 | 25.00 | 51.20 | 60.45 | 0.00 | 54.81 | 278.91 |
| Uniforms | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 231.06 | 0.00 | 138.75 | 57.48 | 0.00 | 0.00 | 427.29 |
| Utilities | | | | | | | | | | | | | |
| Gas and Electric | 7,481.49 | 7,415.60 | 7,342.95 | 6,587.59 | 7,088.92 | 844.44 | 632.86 | 20,749.69 | 7,010.54 | 8,472.74 | 8,104.29 | 8,047.80 | 89,754.91 |
| Management | 407.74 | 2,904.69 | 759.10 | 2,955.49 | 2,927.05 | 138.74 | 927.11 | 212.70 | 2,578.61 | 267.22 | 332.85 | 503.54 | 14,534.14 |
| Water | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 394.45 | 176.82 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 671.27 |
| Utilities - Other | 469.58 | 211.55 | 260.24 | 244.13 | 225.86 | 300.84 | 255.54 | 258.52 | 332.88 | 258.00 | 270.78 | 391.71 | 3,479.94 |
| Total Utilities | 8,358.81 | 10,531.85 | 8,362.29 | 9,787.21 | 10,221.83 | 1,678.47 | 1,592.33 | 21,216.91 | 9,920.33 | 8,697.96 | 8,727.92 | 8,943.05 | 108,339.98 |
| Wages | 30,635.94 | 30,538.02 | 44,463.69 | 32,262.02 | 31,244.89 | 45,097.38 | 31,860.12 | 32,569.75 | 46,915.15 | 32,982.31 | 32,615.18 | 35,808.87 | 427,193.32 |
| Wages Officer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Expense | 97,748.66 | 91,201.94 | 123,900.14 | -76,498.16 | 95,719.67 | 143,123.57 | 131,248.76 | 150,439.98 | 168,605.24 | 128,420.07 | 131,962.22 | 114,022.20 | 1,299,925.40 |
| Net Ordinary Income | 1,289.91 | 12,322.64 | -17,779.94 | 198,591.47 | 85,301.95 | 10,150.93 | 24,623.81 | 19,401.00 | 24,834.19 | 96,178.43 | 92,842.61 | 119,803.41 | 665,360.81 |

EXHIBIT "2"

Page 3 of 3

8:43 AM
05/29/13
Accrual Basis

## Coto Investments dba O'Cairn's Inn and Suites
## Profit & Loss
### September 2012 through August 2013

|  | Sep 12 | Oct 12 | Nov 12 | Dec 12 | Jan 13 | Feb 13 | Mar 13 | Apr 13 | May 13 | Jun 13 | Jul 13 | Aug 13 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Other Income/Expense** | | | | | | | | | | | | | |
| Other Income | | | | | | | | | | | | | |
| Other Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -171.48 | -171.48 |
| Total Other Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -171.48 | -171.48 |
| **Net Other Income** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -171.48 | -171.48 |
| **Net Income** | 1,269.91 | 12,322.64 | -17,779.54 | 196,591.47 | 85,301.95 | 10,160.93 | 24,823.81 | 19,401.00 | 24,634.19 | 95,178.43 | 92,842.61 | 119,431.93 | 665,189.33 |

EXHIBIT "2"                                                                 PAGE 71

# EXHIBIT 3

# EXHIBIT 3

## INSTALLMENT PLAN OF REDEMPTION AGREEMENT

Initiated on 4/4/13 APN # 085.150.76 Total Delinquent Taxes: $ 115,819.83

The 1st Installment must be at least 20% of the delinquent taxes, including accrued penalties due. Subsequent annual payments must be equal to or greater than 20% of the total when the plan was initiated, plus all accrued interest. Monthly interest of 1.5% will accrue on the outstanding installment principal balance(s) during the term of this payment plan. Payments may be made monthly as long as they exceed the outstanding interest. There is $175 fee to initiate, or restart, an installment plan of redemption.

### INSTALLMENT PAYMENT REQUIREMENTS

| | | | |
|---|---|---|---|
| 1st: | 20% of $ 115,794.83 | – | $ 23,158.97 + 175.00 = |
| 2nd: | $ 23,158.97 | plus accrued interest through 04/10/2014 | $23,333.97 |
| 3rd: | $ 23,158.97 | plus accrued interest through 04/10/2015 | MIN. TO START |
| 4th: | $ 23,158.97 | plus accrued interest through 04/10/2016 | PAYMENT PLAN |
| 5th: * | $ 23,158.97 | plus accrued interest through 04/10/2017 | |

* The one time $25.00 Redemption Fee is added to the 5th and final payment.

### PAYOR INFORMATION:

Name _COTO INVESTMENTS, INC._

Name _CHARLES O CAIRNS_

Address _940 E. OCEAN AVE_

City/State/Zip _LOMPOC, CA 93436_

Daytime Phone # (     )

### OWNER INFORMATION:

Name _EMMA ROSE SUMMERT TRUST 2/16/2004_

Name _HAZEL BROWN - Successor Trustee_

Address _940 E. OCEAN AVE_

City/State/Zip _LOMPOC CA_

### TREASURER-TAX COLLECTOR

Prepared by Deputy _J. Rish_       Date _4-4-13_

### PLEASE SIGN AND RETURN TOP COPY

TAX PAYER'S NAME (please print) _CHARLES O CAIRNS_       I have read and understand the conditions for placing my delinquent taxes upon an Installment Plan of Redemption. I hereby agree to make the required installments, including penalties accrued on the unpaid balance, each fiscal year by the April 10th delinquent date. I also agree to pay all current and supplemental taxes coming due in each fiscal year before the delinquent date of the second installment. Failure to pay current year taxes timely, or make required plan payments, will default this payment plan.

SIGNATURE _[signature]_       Date: _4/4/13_

TC-42



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY          **Customer Copy**

**CASHIER'S CHECK**          1110715306

                                                    03/25/2013

California

                Remitter    COTO INVESTMENTS. INC. DBA O'CAIRNS INN

Pay To The    COUNTY OF SANTA BARBARA                    $ *******40,000.00 ***
Order Of

                                    Drawer:  JPMORGAN CHASE BANK, N.A.
                                    NON NEGOTIABLE

                                    TERMS
        KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
        PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

                                                    7R2111187 NEW 01/08 B810004306

**CASHIER'S CHECK**          1110715306     91-2
                                    Date    03/25/2013     1221

                Remitter    COTO INVESTMENTS. INC. DBA O'CAIRNS INN

Pay:    FORTY THOUSAND DOLLARS AND 00 CENTS

Pay To The    COUNTY OF SANTA BARBARA              $ *******40,000.00 ***
Order Of
                                    Drawer  JPMORGAN CHASE BANK, N.A.
                                    *Michael Andrews*

                                    Senior Vice President
                                    JPMorgan Chase Bank, N.A.
                                    Phoenix, AZ

⑈1110715306⑈ ⑆1221000314⑆ 806002234⑈



HARRY E. HAGEN, CPA
TREASURER-TAX COLLECTOR
105 E Anapamu St. Room 109
Santa Barbara, CA
(805) 568-2920
www.sbtaxes.org

Mailing Address:
PO Box 579
Santa Barbara, CA 93102-0579

STAX05 0021 574 05105
04/11/13 10:43:00


Tax Fee Misc                  175.00
Fund 0001
Redemption                 29,824.00
Year 10
Install 0
Parcel/Bill 0851E070
Total                      40,000.00

Check                      40,000.00


Keep This Receipt for your records
Thank You

# EXHIBIT 4

EXHIBIT 4

| 5 Year Projection | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Occupancy / ADR | 55/99 | 55/99 | 55/99 | 55/99 | 60/99 | 75/110 | 70/102 | 70/102 | 60/95 | 50/95 | 50/95 | 50/95 | 55/99 | 55/99 | 55/99 | 55/99 | 60/99 | 75/110 | 70/102 |
| **Income** | | | | | | | | | | | | | | | | | | | |
| Room Revenue | 150000 | 150000 | 150000 | 150000 | 160000 | 200000 | 180000 | 180000 | 160000 | 140000 | 140000 | 140000 | 150000 | 150000 | 150000 | 150000 | 160000 | 200000 | 180000 |
| Misc Income | 500 | 500 | 500 | 500 | 500 | 1500 | 1000 | 1000 | 1000 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 1500 | 1000 |
| City Occupancy Tax | 15000 | 15000 | 15000 | 15000 | 16000 | 20000 | 18000 | 18000 | 16000 | 14000 | 14000 | 14000 | 15000 | 15000 | 15000 | 15000 | 16000 | 20000 | 18000 |
| **Total Income** | 165500 | 165000 | 165000 | 165000 | 176500 | 221500 | 199000 | 199000 | 177000 | 154500 | 154500 | 154500 | 165500 | 165000 | 165000 | 165000 | 176500 | 221500 | 199000 |
| **Expenses** | | | | | | | | | | | | | | | | | | | |
| Advertising | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Automobile Expenses | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Merchant Processing Fees | 4000 | 4000 | 4000 | 4000 | 5000 | 6500 | 6500 | 6500 | 5000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 5000 | 6500 | 6500 |
| Beverages | 1500 | 2000 | 2000 | 2000 | 2000 | 2500 | 3000 | 2500 | 2500 | 2000 | 2000 | 2000 | 1500 | 2000 | 2000 | 2000 | 2000 | 2500 | 3000 |
| Cable & Internet - Same Bill | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 |
| Cleaning Supplies | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 |
| Commissions | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 |
| Extraneous Supplies/Repairs | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 |
| Food | 8000 | 8000 | 8000 | 8000 | 8000 | 12000 | 11000 | 10500 | 10500 | 10500 | 8000 | 8000 | 8000 | 8000 | 8000 | 8000 | 8000 | 12000 | 11000 |
| Guest Amenities | 10000 | 11000 | 11000 | 11000 | 11000 | 12000 | 16000 | 14000 | 14000 | 12000 | 10000 | 10000 | 10000 | 11000 | 11000 | 11000 | 11000 | 12000 | 16000 |
| Hotel/Work Comp Insurance | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 |
| Telephone | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 |
| Landscaping | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Management | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 |
| Office Supplies | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Payroll | 25000 | 25000 | 25000 | 25000 | 37500 | 30000 | 30000 | 30000 | 30000 | 37500 | 25000 | 25000 | 25000 | 25000 | 25000 | 25000 | 37500 | 30000 | 30000 |
| Pool Spa Service | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Postage and Delivery | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Storage | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Professional Accounting Fees | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Promotional | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Rent - Land | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 |
| Repairs - Building and Equipment | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 |
| Room and Property Supplies | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 |
| Taxes - City of Lompoc Hotel Occupancy Tax | 14000 | 14000 | 14000 | 14000 | 15000 | 16000 | 22000 | 18000 | 18000 | 18000 | 14000 | 14000 | 14000 | 15000 | 15000 | 15000 | 15000 | 16000 | 22000 |
| Taxes - Payroll | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 | 9000 |
| Taxes - Property | 350 | 350 | 350 | 18000 | 350 | 350 | 350 | 350 | 350 | 18000 | 350 | 18000 | 350 | 350 | 350 | 18000 | 350 | 350 | 350 |
| Uniforms | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Utilities - Electric, water and trash | 6000 | 6000 | 6000 | 6000 | 6300 | 6500 | 6500 | 6500 | 6300 | 6600 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6300 | 6500 | 6500 |
| Utilities - Gas | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 |
| Property Tax Back Payments | 1300 | 1300 | 1300 | 1300 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 1300 | 2000 | 2000 | 2000 |
| Occupancy Tax Back Payments | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 |
| Occupancy Tax Interest Back Payments | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 |
| Safeway | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 |
| Staples | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| **Total Expenses** | 117745 | 122245 | 122245 | 140065 | 138745 | 134445 | 148845 | 139945 | 137445 | 140145 | 120045 | 138345 | 118445 | 122945 | 122945 | 140765 | 138745 | 134445 | 148845 |
| **Net Operating Income** | 47755 | 42755 | 42755 | 24935 | 37755 | 87055 | 50155 | 59055 | 39555 | 14355 | 34455 | 16155 | 47055 | 42055 | 42055 | 24235 | 37755 | 87055 | 50155 |

**Net Income is before any payment are made to CB&T**

EXHIBIT "4"

| | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Jan-17 | Feb-17 | Mar-17 | Apr-17 | May-17 | Jun-17 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 70/102 | 60/95 | 50/95 | 50/95 | 50/95 | 55/99 | 55/99 | 55/99 | 55/99 | 60/99 | 75/110 | 70/102 | 70/102 | 60/95 | 50/95 | 50/95 | 50/95 | 55/99 | 55/99 | 55/99 | 55/99 | 60/99 | 75/110 |

| | Jul-17 | Aug-17 | Sep-17 | Oct-17 | Nov-17 | Dec-17 | Jan-18 | Feb-18 | Mar-18 | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | Sep-18 | Oct-18 | Nov-18 | Dec-18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 70/102 | 70/102 | 60/95 | 50/95 | 50/95 | 50/95 | 55/99 | 55/99 | 55/99 | 55/99 | 60/99 | 75/110 | 70/102 | 70/102 | 60/95 | 50/95 | 50/95 | 50/95 |
| | 180000 | 180000 | 160000 | 140000 | 140000 | 140000 | 150000 | 150000 | 150000 | 150000 | 160000 | 200000 | 180000 | 180000 | 160000 | 140000 | 140000 | 140000 |
| | 1000 | 1000 | 1000 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 1500 | 1000 | 1000 | 1000 | 500 | 500 | 500 |
| | 18000 | 18000 | 16000 | 14000 | 14000 | 14000 | 15000 | 15000 | 15000 | 15000 | 16000 | 20000 | 18000 | 18000 | 16000 | 16000 | 14000 | 14000 |
| | 199000 | 199000 | 177000 | 154500 | 154500 | 154500 | 165500 | 165000 | 165000 | 165000 | 176500 | 221500 | 199000 | 199000 | 177000 | 154500 | 154500 | 154500 |
| | 200 | 200 | 200 | 200 | 600 | 600 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 600 | 600 |
| | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| | 6500 | 6500 | 6500 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 5000 | 6500 | 6500 | 6500 | 6500 | 4000 | 4000 | 4000 |
| | 3000 | 3000 | 2500 | 2500 | 2000 | 2000 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2500 | 2500 | 2000 | 2000 |
| | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2850 | 2850 | 2850 | 2850 | 2850 | 2850 |
| | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 |
| | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 3000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 2000 | 2000 | 2000 | 2000 |
| | 2000 | 2000 | 2000 | 5000 | 8000 | 8000 | 8000 | 8000 | 8000 | 8000 | 8000 | 8000 | 5000 | 5000 | 2000 | 5000 | 4000 | 4000 |
| | 11000 | 11000 | 10500 | 11000 | 10000 | 10000 | 9000 | 9000 | 9000 | 11000 | 11000 | 12000 | 10500 | 10500 | 10500 | 10500 | 10000 | 8000 |
| | 16000 | 16000 | 14000 | 12000 | 10000 | 10000 | 10000 | 11000 | 11000 | 11000 | 11000 | 12000 | 16000 | 14000 | 14000 | 12000 | 10000 | 10000 |
| | 5000 | 5000 | 2700 | 2700 | 2700 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 2700 | 2700 | 2700 | 5000 |
| | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 |
| | 2000 | 2000 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 2000 | 800 | 800 | 800 | 800 | 800 |
| | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 | 1800 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| | 30000 | 30000 | 37500 | 25000 | 25000 | 25000 | 25000 | 25000 | 37500 | 25000 | 25000 | 30000 | 30000 | 30000 | 37500 | 25000 | 25000 | 25000 |
| | 1000 | 1000 | 500 | 500 | 500 | 500 | 500 | 800 | 500 | 300 | 500 | 1000 | 1000 | 500 | 500 | 500 | 500 | 500 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| | 200 | 200 | 200 | 200 | 200 | 200 | 300 | 300 | 200 | 300 | 300 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 800 | 300 | 300 | 300 | 300 | 300 | 300 |
| | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 | 2860 |
| | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 | 3500 |
| | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 |
| | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 15000 | 15000 | 15000 | 9000 | 15000 | 16000 | 4000 | 4000 | 4000 | 3500 | 14000 | 4000 |
| | 22000 | 18000 | 18000 | 18000 | 14000 | 14000 | 9000 | 9000 | 9000 | 18000 | 15000 | 16000 | 22000 | 18000 | 18000 | 18000 | 14000 | 14000 |
| | 9000 | 9000 | 9000 | 9000 | 11000 | 9000 | 14000 | 9000 | 9000 | 18000 | 11000 | 9000 | 9000 | 9000 | 9000 | 9000 | 11000 | 18000 |
| | 0 | 0 | 0 | 0 | 0 | 18000 | 0 | 0 | 0 | 18000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| | 6500 | 6500 | 6300 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6300 | 6500 | 6500 | 6500 | 6300 | 6000 | 6000 | 6000 |
| | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 |
| | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 |
| | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 | 4000 |
| | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 |
| | 1000 | 1000 | 500 | 1000 | 1000 | 500 | 1000 | 1000 | 1000 | 1000 | 1000 | 500 | 1000 | 1000 | 500 | 1000 | 1000 | 1000 |
| | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| | 148645 | 139945 | 144945 | 127545 | 120045 | 138345 | 118645 | 122945 | 135445 | 140765 | 126245 | 134445 | 148645 | 139945 | 144945 | 127545 | 120045 | 138945 |
| | 50355 | 50355 | 32055 | 26855 | 34455 | 16155 | 47055 | 42055 | 29555 | 24235 | 50255 | $7055 | 50355 | 50355 | 32055 | 26855 | 34455 | 16155 |

# EXHIBIT 5

# EXHIBIT 5

# Central District Of California
# Claims Register

## 8:13-bk-12634-TA Coto Investments, Inc.

**Judge:** Theodor Albert     **Chapter:** 11

**Office:** Santa Ana     **Last Date to file claims:** 07/29/2013

**Trustee:**     **Last Date to file (Govt):**

| Creditor: (33689948) INTERNAL REVENUE SERVICE PO BOX 7346 PHILADELPHIA, PA 19101-7346 | Claim No: 1 *Original Filed Date*: 04/11/2013 *Original Entered Date*: 04/11/2013 *Last Amendment Filed*: 06/13/2013 *Last Amendment Entered*: 06/13/2013 | Status: *Filed by*: CR *Entered by*: Carolyn L Brown *Modified*: |
|---|---|---|

| Amount | claimed: | $2778.13 | | |
|---|---|---|---|---|
| Secured | claimed: | $0.00 | | |
| Priority | claimed: | $1278.13 | | |

| History: | | | | |
|---|---|---|---|---|
| Details | | 1-1 | 04/11/2013 | Claim #1 filed by INTERNAL REVENUE SERVICE, Amount claimed: $2969.64 (Brown, Carolyn ) |
| Details | | 1-2 | 05/08/2013 | Amended Claim #1 filed by INTERNAL REVENUE SERVICE, Amount claimed: $2878.13 (Brown, Carolyn ) |
| Details | | 1-3 | 06/13/2013 | Amended Claim #1 filed by INTERNAL REVENUE SERVICE, Amount claimed: $2778.13 (Brown, Carolyn ) |

| Description: |
|---|
| Remarks: |

| Creditor: (34194365) California Bank & Trust Attn: Bob R. Perdue 1900 Main Street, Suite 150 Irvine, California 92614 | Claim No: 2 *Original Filed Date*: 07/29/2013 *Original Entered Date*: 07/29/2013 | Status: *Filed by*: CR *Entered by*: Anthony J Napolitano *Modified*: |
|---|---|---|

| Amount | claimed: | $4914691.58 | | |
|---|---|---|---|---|
| Secured | claimed: | $4914691.58 | | |

| History: | | | | |
|---|---|---|---|---|
| Details | | 2-1 | 07/29/2013 | Claim #2 filed by California Bank & Trust, Amount claimed: $4914691.58 (Napolitano, Anthony ) |

| Description: |
|---|
| Remarks: |

# Claims Register Summary

**Case Name:** Coto Investments, Inc.
**Case Number:** 8:13-bk-12634-TA
**Chapter:** 11
**Date Filed:** 03/25/2013
**Total Number Of Claims:** 2

| | |
|---|---|
| **Total Amount Claimed*** | $4917469.71 |
| **Total Amount Allowed*** | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $4914691.58 | |
| **Priority** | $1278.13 | |
| **Administrative** | | |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/30/2013 16:31:07 | | |
| **PACER Login:** gf0063 | **Client Code:** | Coto |
| **Description:** Claims Register | **Search Criteria:** | 8:13-bk-12634-TA Filed or Entered From: 3/25/2013 Filed or Entered To: 12/31/2013 |
| **Billable Pages:** 1 | **Cost:** | 0.10 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 18101 Von Karman Avenue, Suite 510, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED OCTOBER 1, 2013; DECLARATION OF RANDY MCDUGALD IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 1, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Charles W Daff**    charleswdaff@gmail.com, cwdafftrustee@gmail.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- **Nancy S Goldenberg**    nancy.goldenberg@usdoj.gov
- **Mary D Lane**    mal@msk.com, mec@msk.com
- **Anthony J Napolitano**    anapolitano@buchalter.com, IFS_filing@buchalter.com
- **Anthony J Napolitano**    anapolitano@buchalter.com, IFS_filing@buchalter.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Angella D Yates**    ayates@buchalter.com, smartin@buchalter.com;IFS_filing@buchalter.com

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) October 1, 2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Linda V. Mai, Twitchell and Rice, LLP, 215 N Lincoln St., Santa Maria, CA 93456

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 1, 2013, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Theodor C. Albert, USBC, 411 West Fourth Street, Santa Ana, CA 92701

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 1, 2013 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |